Beth E. Terrell
Email:  bterrell@tmdwlaw.com
Michael D. Daudt
Email:  mdaudt@tmdwlaw.com
Jennifer R. Murray, OSB #100389
Email: jmurray@tmdwlaw.com
Mary B. Reiten
Email:  mreiten@tmdwlaw.com
Whitney B. Stark, OSB #090350
Email:  wstark@tmdwlaw.com
TERRELL MARSHALL DAUDT & WILLIE PLLC
Email:  mreiten@tmdwlaw.com
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 816-6603
Facsimile:  (206) 350-3528

[Additional Counsel Appear on Signature Page]

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **KELLY OTT**, on behalf of himself and all others similarly situated,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**MORTGAGE INVESTORS CORPORATION OF OHIO, INC.**, an Ohio corporation, also doing business as **MORTGAGE INVESTORS CORPORATION**, **AMERIGROUP MORTGAGE CORPORATION**, **VETERANS INFORMATION DEPARTMENT** and **VETERANS HOME LOANS; WILLIAM EDWARDS,** individually; **JEFFREY CRILLEY,** individually; **JAMES SHATZ,** individually; and **JOHN WESLEY BAILEY, III,** individually,<br><br>　　　　　Defendants. | NO. _____<br><br>**CLASS ACTION ALLEGATION COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION ALLEGATION COMPLAINT FOR
DAMAGES  - 1

Plaintiff, individually and as a class representative for two National Classes of similarly situated individuals and entities, alleges as follows:

## I.  INTRODUCTION

1.1     Plaintiff Kelly Ott resides in Portland, Oregon.  The calls in question were received on his residential telephone line in Portland, Oregon.

1.2     Defendant Mortgage Investors Corporation of Ohio, Inc. ("MIC"), is an Ohio corporation with its principal place of business in St. Petersburg, Florida, and conducts business throughout the United States, including in Multnomah County, Oregon.  At all times relevant to this Complaint, MIC transacted business under the names AmeriGroup Mortgage Corporation, Veterans Information Department, Mortgage Investors Corporation and Veteran Home Loans.

1.3     Defendant William Edwards ("Edwards") is the Chairman of the Board of MIC.

1.4     Defendant Jeffrey Crilley ("Crilley") is the Chief Executive Officer of MIC.

1.5     Defendant James Shatz ("Shatz") is the President of Operations and Information Technology of MIC.

1.6     Defendant John Wesley Bailey, III ("Bailey") is the Chief Corporate Counsel of MIC.

1.7     This action arises out of Defendants' continual and repeated violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 (c), 47 C.F.R. § 64.1200 (c)-(f) by placing and/or knowingly permitting the initiation of calls to persons for purposes of telephone solicitation in order to encourage them to obtain loans from Defendant MIC, when such persons had registered their telephone numbers on the National Do-Not-Call Registry, and out of the initiation by Defendant MIC of calls for telemarketing purposes to persons in order to encourage them to obtain loans from Defendant MIC after they had requested that Defendant MIC stop calling them.

## II.  FACTUAL ALLEGATIONS

2.1     MIC advertises itself on its webpage as "specialists in our industry, ranking MIC among the nation's leading VA lenders."

2.2     In a Complaint for Permanent Injunction, Civil Penalties, and Other Relief filed by the United States of America No. 8:13-cv-1647-T-23TGW in the United States District Court, Middle District of Florida, Tampa Division, a copy of which is attached hereto as Exhibit A, it was alleged that MIC claims to be the nation's largest U.S. Department of Veterans Affairs home loan refinancer and provides home loan refinancing in 42 states.  MIC also claims to have served more than 300,000 veterans and to have refinanced more than $30 billion in V.A. homes loans during the past 15 years.

2.3     Said Complaint further alleged that, from its offices in St. Petersburg and Tampa, Florida, MIC promotes V.A. home loan refinancing services to current and former U.S. military service members throughout the United States, and it promotes its V.A. home loan refinancing through unsolicited outbound telephone calls to consumers.  MIC employs hundreds of telemarketers who cold-call consumers and, using written scripts, encourage consumers to schedule in-home sales appointments with company affiliated licensed loan officers.  Consumers report that they receive dozens of unwanted calls from Defendant and that the company repeatedly fails to remove consumer's telephone numbers from its call list upon demand.

2.4     According to company training materials, MIC's telemarketers are not authorized to remove consumers' telephone numbers from company call lists, telemarketers were directed to transfer "irate" customers who had demanded that the company stop calling them to a manager who would then try to convince the consumer to schedule an appointment. MIC's telemarketers were trained to attempt to "turn around" consumers who had requested that the company stop calling, and MIC reprimanded telemarketers who failed to attempt to "turn around" such calls.  MIC placed more than 5.4 million calls to numbers listed on the National Do No Call Registry between February 2, 2009 and July 30, 2012.  Thousands of

consumers have filed complaints with the Federal Trade Commission and other agencies regarding the unwanted and harassing telemarketing calls by MIC.  Consumers continued to receive calls despite requesting that MIC stop calling, until MIC ceased telemarketing operations in October 2013.

2.5    At all times material to the subject matter of this litigation, Edwards, Crilley, Shatz and Bailey, acting alone or in concert with others, had the authority and responsibility to prevent or correct unlawful telemarketing practices of MIC, and formulated, directed, controlled and participated in the acts and practices of MIC that violated the TCPA, including the acts and practices set forth in this  Complaint.

2.6    Plaintiff Kelly Ott is a veteran of the United States military.  Plaintiff Ott registered his residential telephone number on the National Do-Not-Call Registry on October 7, 2011.  Based on Defendant's own calling records, Plaintiff Ott received telephone solicitation calls from Defendant MIC on November 21, 2011, February 1, 2012, April 5, 2012, and May 7, 2012.  Each of those calls occurred after Plaintiff Ott had registered his residential telephone number on the National Do-Not-Call Registry.

2.7    Plaintiff Ott also directly requested that MIC stop calling on several occasions, including on January 1, 2011.  Nonetheless, Defendant MIC initiated calls for telemarketing purposes to Plaintiff Ott on November 21, 2011, February 1, 2012, April 5, 2012, and May 7, 2012, according to MIC's own records.  Plaintiff Ott also received other telemarketing calls from MIC after his requests that MIC stop calling.

2.8    Plaintiff Ott was not interested in applying for a new home loan or refinancing his existing home loan during 2011 – 2012.  Plaintiff Ott is unaware of how Defendants may have obtained his contact information.  Plaintiff Ott did not contact Defendants or provide his contact information to Defendants.

CLASS ACTION ALLEGATION COMPLAINT FOR
DAMAGES  - 4

### III.  CLASS ACTION ALLEGATIONS

3.1      Plaintiff brings this lawsuit as a Class action on behalf of himself and all other

similarly situated persons, as a proposed Class pursuant to Rule 23.

3.2      The Classes are defined as:

> National Do-Not-Call Class:  All persons who were registered on
> the National Do-Not-Call Registry and who thereafter received
> more than one telephone solicitation call from Defendants within
> any twelve-month period;

> Internal Do-Not-Call Class:  All persons who, when Defendants'
> telemarketing calls were received, had previously requested not
> to receive telemarketing calls from Defendants, and who received
> more than one telemarketing call from Defendants within any
> twelve-month period.

3.3      The Classes consist of hundreds of thousands of persons, making joinder

impractical.  The disposition of the claims of the Class members in a single Class action will

provide substantial benefits to all parties and to the Court.

3.4      Plaintiff's claims are typical of the claims of the Classes, in that Plaintiff, like

other Class members, received telemarketing calls from Defendants while on the National Do-

Not-Call registry and/or after asking Defendants to stop calling.

3.5      There are numerous questions of law and fact common to Plaintiff and the

Classes, and these questions predominate over any questions that may affect individual Class

members, and include, but are not limited to, the following:

a.      Whether Defendants' placing telephone calls to persons for purposes of

solicitation in order to encourage them refinance their home loans when such persons had

registered their telephone numbers on the National Do-Not-Call Registry and/or had requested

that Defendants stop calling them violates the Telephone Consumer Protection Act ("TCPA")

47 U.S.C. § 227 (c), 47 C.F.R. § 64.1200 (c)-(f);

CLASS ACTION ALLEGATION COMPLAINT FOR
DAMAGES  - 5

      b.      Whether Plaintiff and the Classes are entitled to presumptive statutory damages of $500 per violation under the TCPA; and

      c.      Whether Plaintiff and the Classes are entitled to compensatory and exemplary damages, and the measure of such damages.

3.6      Plaintiff will fairly and adequately represent and protect the interests of the Classes.  He has retained counsel with substantial experience in prosecuting consumer class actions, including actions under the TCPA.  Plaintiff will vigorously prosecute this action on behalf of the Classes.  Neither Plaintiff nor his counsel has any interests adverse to those of the Classes.

3.7      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Absent a class action, Class members would find the cost of litigating their individual claims to be prohibitive, and would have no effective remedy at law.  Because of the relatively small size of the individual Class members' claims it is unlikely that individual Class members could afford to seek legal redress for Defendants' wrongful conduct.  Class action treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

3.8      Defendants have engaged in a common course of conduct toward Plaintiff and members of the Classes by subjecting them to unlawful telephone solicitation calls.  The common issues arising from this conduct that affect Plaintiff and members of the Classes predominate over any individual issues.  Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

### IV.  FIRST CLAIM FOR RELIEF

**(Violation of the Telephone Consumer Protection Act against MIC)**

4.1      Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

CLASS ACTION ALLEGATION COMPLAINT FOR
DAMAGES  - 6

4.2      Defendant MIC has violated 47 U.S.C. 227(c) and 47 CFR 64.1200 *et seq.* promulgated pursuant to 47 U.S.C. 227(c) by initiating telephone solicitation calls to Plaintiff and members of the National Do-Not-Call Class when their telephone numbers were on the National Do-Not-Call registry.  Defendant MIC has also violated 47 U.S.C. 227(c) and 47 CFR 64.1200 *et seq.* by initiating  calls for telemarketing purposes to Plaintiff and members of the Internal Do-Not-Call Class when those numbers were or should have been on MIC's own Internal Do-Not-Call list because Plaintiff and members of the Internal Do-Not-Call Class had requested Defendant MIC to stop calling.

4.3      As a result of Defendant MIC's violations, Plaintiff and members of the Classes are entitled to statutory damages, including treble damages, for each of Defendant's violations of the law.

## V.  SECOND CLAIM FOR RELIEF

### (Violation of TCPA against Edwards, Crilley, Shatz and Bailey)

5.1      Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

5.2      Defendant MIC is an alter ego of Edwards, Crilley, Shatz and Bailey, and a unity of interest and ownership exists between the Defendants such that any separateness has ceased to exist, there is a commingling of property rights or interests such that Defendants function as one, and Defendants have acted in concert in doing the things alleged herein.  In addition, the conduct that gives rise to the claims for relief alleged herein was committed by, or on behalf of, each Defendant and harmed Plaintiff and the proposed Classes.  Upon information and belief, Edward, Crilley, Shatz and/or Bailey personally, or through affiliated entities or trusts, retain ownership of some of loans made by MIC.  Upon information and belief, Defendant MIC is woefully undercapitalized in relation to the significant liability associated with the claims of Plaintiff and the Classes for statutory damages under the TCPA.  Therefore,

to avoid an unjustified loss to Plaintiff and the Classes, or to avoid oppression, fraud, and inequity, recognition of Defendant MIC's separate corporate status should be disregarded.

5.3     Defendants Edwards, Crilley, Shatz and Bailey directly and personally participated in, directed and/or authorized the conduct constituting the statutory violations alleged herein.  Defendants Edwards, Crilley, Shatz and Bailey personally established, approved and ratified Defendant MIC's policies and practices, oversaw operations and were directly involved in the business practices that violated the TCPA.

5.4     Defendants Edwards, Crilley, Shatz and Bailey were all personally and actively involved in managing the operations of Defendant MIC, and did not treat Defendant MIC as a passive investment.  For example, Edwards personally trained those who were responsible for training Defendant MIC's telemarketers.  Edwards also personally received numerous complaints from consumers who expressed directly to him their requests that MIC stop calling. Crilley, Shatz and Bailey personally devised and executed numerous telemarketing campaigns in which Defendant MIC deliberately "turned off" all Do-Not-Call lists, with the aim of making telemarketing calls to consumer who had previously asked MIC to stop calling or had registered their numbers on the National Do-Not-Call Registry, and Edwards and Crilley ratified all such actions.  Edwards, Crilley, Shatz and Bailey all personally received numerous emails concerning requests to stop the calls by members of the Internal Do-Not-Call Class, but, undaunted, Edwards, Crilley, Shatz and Bailey nonetheless continued to caused MIC to make telemarketing calls with its Do-Not-Call lists disabled.

5.5     Ordinary principles of vicarious liability apply to TCPA claims.  Under these principles, Edwards, Crilley, Shatz and Bailey are liable for the TCPA violations alleged above because they were directly involved in, authorized and ratified the MIC operations that violated the TCPA within the scope of their duties as officers, directors and/or employees of MIC.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Classes, request that the Court enter judgment against Defendants and award the following relief:

A.      Certification of the proposed Classes pursuant to Rule 23(b)(3);

B.      Judgment against Defendants for statutory damages of not less than $500 for each violation committed by them plus treble damages for each willful violation, and other damages as permitted by law;

C.      Designation of Plaintiff as representative of the Classes and his counsel as Class Counsel;

D.      An award of statutory, compensatory, and exemplary damages for the acts complained of herein;

F.      An award of costs and attorneys' fees, as allowed by law; and

G.      Such other or further relief as the Court determines equitable.

## VII.  DEMAND FOR JURY TRIAL

Plaintiff, on his own behalf and on behalf the Classes, hereby demands a trial by jury for all issues so triable.

RESPECTFULLY SUBMITTED AND DATED this 18th day of April, 2014.

TERRELL MARSHALL DAUDT & WILLIE PLLC

By:  /s/ Jennifer Rust Murray, OSB #100389
    Beth E. Terrell
    Email:  bterrell@tmdwlaw.com
    Michael D. Daudt
    Email:  mdaudt@tmdwlaw.com
    Jennifer R. Murray, OSB #100389
    Email: jmurray@tmdwlaw.com
    Mary B. Reiten
    Email:  mreiten@tmdwlaw.com
    Whitney B. Stark, OSB #090350
    Email:  wstark@tmdwlaw.com
    936 North 34th Street, Suite 300
    Seattle, Washington  98103-8869
    Telephone:  (206) 816-6603
    Facsimile:  (206) 350-3528

Rob Williamson
Email:  roblin@williamslaw.com
Kim Williams
Email:  kim@williamslaw.com
WILLIAMSON & WILLIAMS
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
Telephone:  (206) 466-6230
Facsimile:  (206) 535-7899

*Attorneys for Plaintiff*

— **EXHIBIT  A** —

RECEIVED

## UNITED STATES DISTRICT COURT
## IN THE MIDDLE DISTRICT OF FLORIDA

13 JUN 25  AM 9: 11

CLE ... ...........
MIDDLE .......... ........
TAMPA, FLORIDA

)
UNITED STATES OF AMERICA,                    )
                                             )
            Plaintiff,                       )   Civil No.
                                             )
v.                                           )   8:13cv1647 23T6w
                                             )
**MORTGAGE INVESTORS CORPORATION**          )
**OF OHIO, INC.**, an Ohio corporation, also )
doing business as **MORTGAGE INVESTORS**     )
**CORPORATION, AMERIGROUP**                 )
**MORTGAGE CORPORATION, VETERANS**          )
**INFORMATION DEPARTMENT**, and             )
**VETERANS HOME LOANS**,                    )
                                             )
            Defendant.                       )
                                             )
                                             )
_____      )

## COMPLAINT FOR PERMANENT INJUNCTION,
## CIVIL PENALTIES, AND OTHER RELIEF

Plaintiff, the United States of America, acting upon notification and authorization

to the Attorney General by the Federal Trade Commission ("Commission"), by its

undersigned attorneys, for its Complaint alleges as follows:

### JURISDICTION AND VENUE

1.      This is an action arising under Sections 5(a), 5(m)(1)(A), 13(b), and

19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(a), 45(m)(1)(A),

53(b), and 57b; the Telemarketing and Consumer Fraud and Abuse Prevention Act

("Telemarketing Act"), 15 U.S.C. § 6101 *et seq*.; and the 2009 Omnibus Appropriations

1

Act, Public Law 111-8, Section 626, 123 Stat. 524, 678 (Mar. 11, 2009) ("Omnibus

Act"), as clarified by the Credit Card Accountability Responsibility and Disclosure Act of

2009, Public Law 111-24, Section 511, 123 Stat. 1734, 1763-64 (May 22, 2009) ("Credit

Card Act"), and amended by the Dodd-Frank Wall Street Reform and Consumer

Protection Act, Public Law 111-203, Section 1097, 124 Stat. 1376, 2102-03 (July 21,

2010) ("Dodd-Frank Act"), 12 U.S.C. § 5538, to obtain a permanent injunction, monetary

civil penalties, restitution, disgorgement, and other equitable relief for violations of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), the FTC's Telemarketing Sales Rule

("TSR"), 16 C.F.R. Part 310, and the Mortgage Acts and Practices - Advertising Rule

("MAP Rule"), 16 C.F.R. Part 321, recodified as Mortgage Acts and Practices

("Regulation N"), 12 C.F.R. Part 1014, in connection with the marketing and sale of

mortgage credit products.

2.      This Court has jurisdiction over this matter under 28 U.S.C. §§ 1331,

1337(a), 1345, and 1355; under 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 57b, 6102(c) and

6105(b); and under Section 626 of the Omnibus Act, as clarified by Section 511 of the

Credit Card Act and amended by Section 1097 of the Dodd-Frank Act, 12 U.S.C.

§5538.

3.      Venue is proper in the United States District Court for the Middle

District of Florida under 28 U.S.C. §§ 1391(b)-(c), 1395(a), and 15 U.S.C. § 53(b).

2

## PLAINTIFF

4.     This action is brought by the United States of America on behalf of the

Federal Trade Commission.  The Commission is an independent agency of the United

States government given statutory authority and responsibility by the FTC Act, *as*

*amended*, 15 U.S.C. §§ 41-58.  The Commission enforces Section 5(a) of the FTC Act,

15 U.S.C. § 45(a), which prohibits unfair and deceptive acts or practices in or affecting

commerce; the Telemarketing Act, 15 U.S.C. § 6101 *et seq*., pursuant to which the FTC

promulgated and enforces the TSR, 16 C.F.R. Part 310, which prohibits deceptive and

abusive telemarketing acts or practices; and the MAP Rule, 16 C.F.R. Part 321, effective

August 19, 2011, and its recodification as Regulation N, 12 C.F.R. Part 1014, effective

December 30, 2011.  Dodd-Frank Act § 1097, 12 U.S.C. § 5538.  Among other things,

the MAP Rule and Regulation N prohibit misleading or deceptive commercial

communications relating to mortgage credit products.

## DEFENDANT

5.     Defendant Mortgage Investors Corporation of Ohio, Inc., ("Mortgage

Investors"), is an Ohio corporation with its principal place of business located at 6090

Central Avenue, St. Petersburg, Florida 33707.  At all times relevant to this Complaint,

Mortgage Investors has transacted business in this district and throughout the United

States.  Mortgage Investors claims to be the nation's largest U.S. Department of Veterans

Affairs ("Veterans Affairs" or "V.A.") home loan refinancer and provides home loan

refinancing services in 42 states.  Mortgage Investors claims to have served more than

3

300,000 veterans and to have refinanced more than $30 billion in V.A. home loans during the past 15 years.

6.      At times relevant to this Complaint, Mortgage Investors transacted business under the names AmeriGroup Mortgage Corporation, Veterans Information Department, Mortgage Investors Corporation, and Veterans Home Loans.

## COMMERCE

7.      At all times material to this Complaint, Defendant has maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANT'S BUSINESS PRACTICES

8.      From its offices in St. Petersburg and Tampa, Florida, Defendant Mortgage Investors Corporation of Ohio, Inc., promotes V.A. home loan refinancing services to current and former U.S. military service members throughout the United States.

9.      Defendant promotes its V.A. home loan refinancing through unsolicited outbound telephone calls to consumers and inbound calls generated in response to direct mail solicitations and a company website, www.mortgageinvestors.com.

10.      Defendant employs hundreds of telemarketers who cold-call consumers and, using written scripts, encourage consumers to schedule in-home sales appointments with company affiliated licensed loan officers.

4

11.    To convince consumers to schedule in-home appointments, telemarketers following Defendant's written script ask consumers their original home loan amount and then cite the purported monthly savings that consumers would receive by refinancing:

> Telemarketer:  So, if you can give me an idea of what your original loan amount was, I can tell you what your savings will be _____?
>
> It looks like we can save you approximately _____ a month, which is a substantial amount of money, ISN'T IT? Now most people tell me they can find a better use for this money than to give it to their current mortgage company. I imagine you could too, COULDN'T YOU?

12.    When quoting the available savings to consumers, Defendant's telemarketers imply that the savings will last for the duration of a 30-year loan. However, Defendant offers only adjustable rate mortgages in which the consumer's monthly payment will increase if interest rates rise. As a result, consumers are misled about the potential savings that may be available by refinancing.

13.    In numerous instances, Defendant's telemarketers tell consumers that they are offering a fixed-rate, low interest home loan at no cost to consumers. Defendant's telemarketers are trained to respond to consumers' questions concerning the costs of refinancing with the following response:

> Client:                **HOW MUCH IS IT GOING TO COST ME?**
>
> Telemarketer:  **One of the best parts is that with our programs, there is no money out of your pocket...** (continue presentation)

5

14.     In truth, Mortgage Investors does not offer a fixed rate loan; they offer adjustable rate mortgages.  Moreover, the loans are not available at without cost to consumers.

15.     Consumers report that they receive dozens of unwanted calls from Defendant and that the company repeatedly fails to remove consumers' telephone numbers from its call list upon demand.

16.     When consumers inform Defendant that they do not wish to receive further calls from the company or that their telephone numbers are listed with the National Do Not Call Registry, Defendant's telemarketers respond that they are not trying to sell anything, they are only trying to save veterans money.

17.     According to company training materials, Defendant's telemarketers are not authorized to remove consumers' telephone numbers from company call lists. Instead, training materials direct telemarketers to transfer "irate" consumers who demand that the company stop calling them to a manager.  In numerous instances, after the consumer repeats his demand to the manager that the company stop calling, the manager again tries to convince the consumer to schedule an appointment to learn about the savings purportedly available through a home loan refinance.

18.     Defendant placed more than 5.4 million calls to telephone numbers listed on the National Do Not Call Registry between February 2, 2009 and July 30, 2012.

19.    Thousands of consumers have filed complaints with the Federal Trade Commission and other agencies concerning unwanted and harassing telemarketing calls by Defendant.

20.    Consumers who complete an in-home sales presentation but choose not to refinance their home loan remain on Defendant's calling lists and receive continued telemarketing calls, despite requests that the calls stop.

21.    In addition to harassing consumers with unwanted telemarketing calls, Defendant also mails written sales solicitations to consumers.

22.    Defendant's mailers offer low-interest, no or low cost loans and in numerous instances imply that they come from Veterans Affairs or another government source.  Defendant's envelopes often bear a Washington D.C. mail drop address rather than the company's Florida business addresses, and prominently reference a "V.A. benefits code" as if the offer was approved or endorsed by the V.A. or issued as part of a service member's military benefits program.

23.    As an example, one of Defendant's mailers is printed on an envelope that appears to come from the government, with a return address of 2020 Pennsylvania Avenue NW, Mail Stop 742, Washington, D.C. 20006.  The solicitation states:

> The Veterans Administration's mortgage refinance program offers veterans a safe, quick and easy way to reduce monthly payments.  Amerigroup Mortgage Corporation, a V.A. Authorized Direct Lender, **has saved veterans an average of $216.31 per month (often more)**, which is almost **$2600** extra per year in your pocket.

7

Our interest rate is the lowest it has been in 50 years which means you may be paying too much for your mortgage. . . **Call TODAY and be sure to reference your Benefit Activation Code VA 9999999.**

24.     Many consumers complain that the company's mailers falsely suggest that Mortgage Investors is associated with the V.A.   Indeed, two of the company's assumed names, Veterans Information Department and Veterans Home Loans, are likely to mislead reasonable consumers into believing that Defendant is affiliated with the V.A.

## TELEMARKETING SALES RULE

25.     Congress directed the Federal Trade Commission to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. § 6101-6108, in 1994.  The Commission adopted the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter.  16 C.F.R. Part 310.

26.     The 2003 amendments to the TSR established the National Do Not Call Registry, a list of consumers who do not wish to receive certain types of telemarketing calls.  Consumers can register their telephone numbers on the National Do Not Call Registry without charge either through a toll-free telephone call or over the Internet at www.donotcall.gov.  The National Do Not Call Registry is maintained by the Commission.

8

27.    The Commission allows sellers, telemarketers, and other permitted organizations to access the National Do Not Call Registry over the Internet at www.telemarketing.donotcall.gov, to pay the fee(s) if required by the TSR, and to download a list of numbers that are prohibited from being called.

28.    The TSR defines a seller as "any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration." 16 C.F.R. § 310.2(aa).

29.    The TSR defines a telemarketer as "any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor." 16 C.F.R. § 310.2(cc).

30.    The TSR defines telemarketing as "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by the use of one or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(dd).

31.    The TSR prohibits sellers and telemarketers from initiating outbound telephone calls to any consumer who has previously stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered, or made by or on behalf of the charitable organization for which a charitable contribution is being solicited (an "Entity-Specific Do Not Call request"). 16 C.F.R. § 310.4(b)(1)(iii)(A).

9

32.     The TSR prohibits sellers and telemarketers from engaging in conduct that denies or interferes in any way, directly or indirectly, with a person's right to be placed on a list of persons who made Entity-Specific Do Not Call requests.  16 C.F.R. § 310.4(b)(1)(ii).

33.     The TSR prohibits sellers and telemarketers from initiating outbound telephone calls to numbers on the National Do Not Call Registry.  16 C.F.R. § 310.4(b)(1)(iii)(B).

34.     Consumers can complain of Entity-Specific Do Not Call request or National Do Not Call Registry violations through a toll-free telephone call, over the Internet at www.donotcall.gov, or by otherwise contacting law enforcement authorities.

35.     Defendant is a "seller" or "telemarketer" engaged in "telemarketing" as those terms are defined in the TSR, 16 C.F.R. § 310.2(aa), (cc), and (dd).

36.     Defendant initiates outbound telephone calls to consumers in the United States to induce the purchase of Defendant's services.

37.     Defendant has engaged in telemarketing by a plan, program, or campaign conducted to induce the purchase of goods or services by use of one or more telephone and which involves more than one interstate telephone call.

38.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT I

39.      In numerous instances, in connection with telemarketing, Defendant has engaged in, or caused others to engage in, denying or interfering, directly or indirectly, with a person's right to be placed on an Entity-Specific Do Not Call list in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(ii).

## COUNT II

40.      In numerous instances, in connection with telemarketing, Defendant has initiated or caused others to initiate an outbound telephone call to a person who has previously stated that he or she does not wish to receive such a call made by or on behalf of the seller whose goods or services are being offered in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(A).

## COUNT III

41.      In numerous instances, in connection with telemarketing, Defendant has initiated or caused others to initiate an outbound telephone call to a person who has registered his or her telephone number on the National Do Not Call Registry in violation of the TSR, 16 C.F.R. § 310.4(b)(1)(iii)(B).

## MORTGAGE ACTS AND PRACTICES - ADVERTISING RULE

42.      In July 2011, the FTC issued the MAP Rule, 16 C.F.R. Part 321, which became effective on August 19, 2011, and which prohibited deceptive claims in mortgage advertising.  The MAP Rule was subsequently recodified as Regulation N, 12 C.F.R. Part 1014, effective December 30, 2011.  Dodd-Frank Act § 1097, 12 U.S.C. § 5538.  The

11

FTC has shared authority with the Consumer Financial Protection Bureau to enforce Regulation N.

43.     The MAP Rule and Regulation N define "commercial communication" as "any written or oral statement, illustration, or depiction . . . that is designed to effect a sale or create interest in purchasing goods or services, whether it appears on or in a label, package, package insert, radio, television, cable television, brochure, newspaper, magazine, pamphlet, leaflet, circular, mailer, book insert, free standing insert, letter, catalogue, poster, chart, billboard, public transit card, point of purchase display, film, slide, audio program transmitted over a telephone system, telemarketing scrip, on-hold script, upsell script, training materials provided to telemarketing firms, program-length commercial ("infomercial"), the internet, cellular network, or any other medium." 16 C.F.R. § 321.2(a), 12 C.F.R. § 1014.2.

44.     The MAP Rule and Regulation N define "mortgage credit product" as "any form of credit that is secured by real property or a dwelling and that is offered or extended to a consumer primarily for personal, family, or household purposes." 16 C.F.R. § 321.2(e), 12 C.F.R. § 1014.2.

45.     The MAP Rule and Regulation N prohibit any commercial communication concerning a mortgage credit product from making certain materially misleading representations, including but not limited to:

          a.     Misrepresenting the variability of interest, payments, or other terms of the mortgage credit product, including falsely

representing that an interest rate is "fixed." 16 C.F.R. § 321.3(g), 12 C.F.R. § 1014.3(g);

b.    Offering any comparison of a rate or payment that will be available for a period less than the full length of the mortgage credit product and any actual or hypothetical rate or payment. 16 C.F.R. § 321.3(h), 12 C.F.R. § 1014.3(h);

c.    Misrepresenting an association of the mortgage credit product or the provider of such product with any other person or program, including misrepresenting that the provider is, or is affiliated with, any governmental entity or other organization. 16 C.F.R. § 321.3(n), 12 C.F.R. § 1014.3(n);

d.    Misrepresenting the existence, nature, or amount of fees or costs to the consumer associated with the mortgage credit product, including misrepresenting that no fees are charged. 16 C.F.R. § 321.3(c), 12 C.F.R. § 1014.3(c).

46.    Pursuant to the Omnibus Act, § 626, 123 Stat. at 678, as clarified by the Credit Card Act, § 511, 123 Stat. at 1763-64 and amended by the Dodd-Frank Act, § 1097, 124 Stat. at 2102-03, 12 U.S.C. § 5538, and pursuant to Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the MAPS Rule or Regulation N constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

13

## COUNT IV

47.    In numerous instances, in connection with the advertising, marketing, promotion, offering for sale, or sale of home loan refinancing services, and in violation of the MAP Rule, 16 C.F.R. §§ 321.3(g), (h), (n), and (c), and Regulation N, 12 C.F.R. §§ 1014.3(g), (h), (n), and (c), Defendant has misrepresented, directly or indirectly, expressly or by implication:

      a.    That Defendant is offering a mortgage credit product with a fixed
            rate of interest;

      b.    The savings associated with a mortgage credit product;

      c.    That a mortgage credit product, or Defendant, is associated with
            the V.A., a governmental entity, or other organization;

      d.    That a mortgage credit product is available to consumers at no
            cost.

48.    Defendant's representations, as set forth in Paragraph 47 of this Complaint, are material misrepresentations in violation of multiple provisions of the MAP Rule, 16 C.F.R. §§ 321.3(g), (h), (n), and (c), and Regulation N, 12 C.F.R. §§ 1014.3(g), (h), (n), and (c).

## FEDERAL TRADE COMMISION ACT

49.    Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce."

50.     Misrepresentations or deceptive omission s of material fact constitute
deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

### COUNT V

51.     In numerous instances, in connection with the advertising, marketing,
promotion, offering for sale, or sale of home loan refinancing services, Defendant has
represented, directly or indirectly, expressly or by implication:

      a.    That Defendant is offering a mortgage credit product with a fixed
rate of interest;

      b.    The savings associated with a mortgage credit product;

      c.    That a mortgage credit product, or Defendant, is associated with
the V.A., a governmental entity, or other organization;

      d.    That a mortgage credit product is available to consumers at no
cost.

52.     In truth and in fact, in numerous instances in which Defendant has made
the representations set forth in Paragraph 51 of this Complaint:

      a.    The Defendant is not offering a mortgage credit product with  a
fixed rate of interest;

      b.    The savings associated with a mortgage credit product are not
available or are not available for the duration of the loan;

      c.    Neither the mortgage credit product nor Defendant is associated
with the V.A., a governmental entity, or other organization;

15

d.     The mortgage credit product is not available to consumers without

cost.

53.     Therefore, Defendant's representations as set forth in Paragraph 51 of this

Complaint are false and misleading and constitute deceptive acts or practices in violation

of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

**CONSUMER INJURY**

54.     Consumers have suffered and will continue to suffer substantial

injury as a result of Defendant's violations of the TSR, the MAP Rule and Regulation N,

and the FTC Act.  In addition, Defendant has been unjustly enriched as a result of its

unlawful acts or practices.  Absent injunctive relief by this Court, Defendant is likely to

continue to injure consumers, reap unjust enrichment, and harm the public interest.

**COURT'S POWER TO GRANT RELIEF**

55.     Under Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), this Court is

authorized to issue a permanent injunction to ensure that Defendant will not continue to

violate the TSR, MAP Rule, Regulation N, and FTC Act.

**EQUITABLE RELIEF FOR VIOLATIONS OF THE
TSR, MAP RULE, REGULATION N, AND THE FTC ACT**

56.     Under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and

57b, this Court is authorized to issue all equitable and ancillary relief as it may deem

appropriate in the enforcement of the TSR, MAP Rule, Regulation N, and FTC Act,

16

including the ability to order rescission or reformation of contracts, restitution, the refund of monies paid, and disgorgement to deprive a wrongdoer of ill-gotten monies.

## CIVIL PENALTIES FOR VIOLATIONS OF THE TSR, MAP RULE AND REGULATION N

57.     Defendant violated the TSR, MAP Rule, and Regulation N, as described above, with actual knowledge or knowledge fairly implied on the basis of objective circumstances, as set forth in Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

58.     Each instance within five (5) years preceding the filing of this Complaint, in which Defendant failed to comply with the TSR, MAP Rule, or Regulation N, in one or more of the ways described above, constitutes a separate violation for which Plaintiff seeks monetary civil penalties.

59.     Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A) and Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, *as amended*, authorizes this Court to award monetary civil penalties of not more than $11,000 for each violation of the TSR that occurred on or before February 9, 2009, and civil penalties of not more than $16,000 for each violation of the TSR, MAP Rule, or Regulation N, when applicable, that occurred on or after February 10, 2009.

17

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff United States of America, pursuant to 15 U.S.C. §§ 45(m)(1)(A), 53(b), and 57b, the Omnibus Act, and the Court's own equitable powers, respectfully requests that the Court:

A.      Enter a judgment against Defendant and in favor of Plaintiff for each law violation alleged in this Complaint;

B.      Enter a permanent injunction to prevent future violations of the TSR, MAP Rule and Regulation N, and FTC Act by Defendant;

C.      Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendant's violations of the MAP Rule, Regulation N, and FTC Act, including but not limited to recision or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies;

D.      Award Plaintiff monetary civil penalties for each violation of the TSR, MAP Rule, and Regulation N;

E.      Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

18

**FOR THE UNITED STATES OF AMERICA:**

STUART F. DELERY
Acting Assistant Attorney General
Civil Division
U.S. Department of Justice

MAAME EWUSI-MENSAH FRIMPONG
Deputy Assistant Attorney General

ROBERT E. O'NEILL
United States Attorney


Dated: June 25, 2013

LACY R. HARWELL, JR.
Chief, Civil Division
Florida Bar No. 714623
400 North Tampa Street, Suite 3200
Tampa, Florida 33602
Telephone:  (813) 274-6000
Facsimile:  (813) 274-6200
Email: Randy.Harwell@usdoj.gov

MICHAEL S. BLUME
Director, Consumer Protection Branch

RICHARD GOLDBERG
Assistant Director
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, D.C.  20044
Telephone:  202-307-2532
Fascimile:  202-514-8742
Email: Richard.goldberg@usdoj.gov

19

**FOR THE FEDERAL TRADE COMMISSION**:

Dated: June 25, 2013

For DAMA J. BROWN, Attorney
Florida Special Bar No. A5501135
Telephone: (404) 656-1361
Facsimile:   (404) 656-1379
Email: dbrown1@ftc.gov

FEDERAL TRADE COMMISSION
225 Peachtree Street N.E.
Suite 1500
Atlanta, Georgia 30303

20