# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

**KELLY OTT; NANCY LUEBBEN;** and
**BENJAMIN GESLER,** on behalf of
themselves and all others similarly situated**,**

        Plaintiffs,

    **v.**

**MORTGAGE INVESTORS
CORPORATION OF OHIO, INC.,** an Ohio
corporation also doing business as
**MORTGAGE INVESTORS
CORPORATION, AMERIGROUP
MORTGAGE CORPORATION,
VETERANS INFORMATION
DEPARTMENT** and **VETERANS HOME
LOANS; WILLIAM EDWARDS,**
individually; **JEFFREY CRILLEY,**
individually; **JAMES SHATZ,** individually;
and **JOHN WESLEY BAILEY III,**
individually**,**

        Defendants.

Case No. 3:14-cv-00645-ST

**OPINION AND ORDER**

**STEWART, Magistrate Judge:**

## <u>INTRODUCTION</u>

    Plaintiffs, Kelly Ott, Nancy Luebben, and Benjamin Gesler, filed this class action against

defendants for violations of the Telephone Consumer Protection Act, 47 USC § 227 *et seq*,

("TCPA"), by means of a nation-wide telemarketing scheme targeted at U.S. military veterans. Defendant, Mortgage Investors Corporation of Ohio, Inc. ("MIC"), is a mortgage lending company doing business under several other names and specializing in Interest Rate Reduction Refinance Loans ("IRRRLs") guaranteed by the U. S Department of Veterans Affairs. The individual defendants are directors, officers and employees of MIC.

The TCPA prohibits using a predictive dialer to make any telephone call for non-emergency purposes to a number assigned to a "cellular telephone service" without the "prior express consent of the called party." 47 USC § 227(b)(1)(A)(iii). The TCPA also prohibits initiating two or more telephone calls within a 12-month period to a residential telephone line in violation of either the internal do-not-call rules or National Do-Not-Call Registry ("NDNCR") rules enacted by the Federal Communications Commission ("FCC"). 47 USC § 227(c)(1)-(2) (internal do-not-call lists); 47 USC § 227(c)(3) (NDNCR); 47 CFR § 64.1200(c)-(d) (FCC). A person who receives a call in violation of these prohibitions may bring a civil action to recover statutory damages of $500.00 per violation, as well as treble damages and injunctive relief. 47 USC § 227(b)(3), (c)(5)(A)-(C).

Plaintiffs allege that defendants violated the TCPA by: (1) initiating calls through an Automated Telephone Dialing System ("ATDS") to cellular telephone numbers for non-emergency purposes (First Claim); (2) continuing to make calls to individuals who made "do-not-call requests" (Third Claim); and (3) initiating more than one call within a 12-month period to individuals on the NDNCR (Fifth Claim). Alleging that the violations were "knowing and/or willful," plaintiffs seek statutory damages up to $500.00 and treble damages up to $1,500.00 for each call that violated the TCPA (Second, Fourth and Sixth Claims).

This court has jurisdiction over the TCPA claims pursuant to 28 USC § 1331.  All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c) (docket #82).

After plaintiffs filed a First Amended Complaint (docket #19), MIC filed a Motion to Strike Certain Paragraphs (docket #25) and a Motion to Dismiss Pursuant to the Federal First-to-File Rule (docket #27).  In addition, the individual defendants filed a Motion to Dismiss Pursuant to FRCP 12(b)(2) and (6) (docket #33),  MIC filed a Motion to Strike Class Allegations (docket #51), and all defendants filed a Motion for Involuntary Dismissal (docket #57).  Later the parties agreed that MIC would withdraw its first two motions, that the remaining three motions would be deemed to address plaintiffs' Second Amended Complaint, and that MIC would join part of the individual defendants' motion to dismiss (dockets #74).  An Order was then entered accordingly (docket #75), and plaintiffs filed a Second Amended Complaint (docket #77).

For the reasons set forth below, defendants' motions are denied, except that MIC's motion to strike the class allegations is granted in part.

## ALLEGATIONS

### I. Plaintiffs

Ott and Luebben are veterans of the United States military, but Gesler is not.  Second Amended Complaint, ¶¶ 41, 49, 56.  All of them are citizens of Oregon, and all received telemarketing calls from MIC urging them to refinance their home loans.  *Id*, ¶¶ 2-4, 43-45, 50-52, 57-59.

MIC called Ott even after he had registered his residential telephone number on the NDNCR and asked MIC to stop calling him.  *Id*, ¶¶ 42-45.  MIC called Luebben even after she asked MIC to stop calling her several times. *Id*, ¶¶ 50-52.  Neither Ott nor Luebben had any

interest in refinancing, contacted MIC, or otherwise consented to MIC's calls. *Id*, ¶¶ 46, 48, 53, 55. Ott seeks to represent a class of similarly situated individuals called by MIC after they had registered their telephone numbers on the NDNCR ("National Do-Not-Call Class"). *Id*, ¶ 66(e)-(f). Luebben seeks to represent a class of consumers called by MIC after they had asked not to be called again ("Internal Do-Not-Call Class"). *Id*, ¶ 66(c)-(d).

MIC also repeatedly called Gesler's cell phone even after he asked MIC to stop calling him. *Id*, ¶¶ 57-59. Gesler had no interest in refinancing his home loan, never contacted MIC or otherwise consented to MIC's calls. *Id*, ¶¶ 60, 62. Gesler seeks to represent a class of similarly situated individuals whom MIC called on their cell phones ("Cell Phone Class") and the Internal Do-Not-Call Class. *Id*, ¶ 67(a)-(d).

## II. **MIC**

MIC claims to be the largest U.S. Department of Veteran Affairs home loan refinancer and provides home loan refinancing in 42 states to current and former members of the United States military. *Id*, ¶¶ 20-21. To increase the volume of its customers, it uses an ATDS, also known as a predictive dialer. *Id*, ¶ 19. From its offices in Florida, hundreds of telemarketers use written scripts to make unsolicited outbound telephone calls, encouraging consumers to schedule in-home sales appointments with company-affiliated loan officers. *Id*, ¶¶ 21-22.

Consumers reported receiving dozens of unwanted calls from MIC which repeatedly failed to remove their telephone numbers from its call list upon demand. *Id*, ¶ 23. According to company training materials, MIC's telemarketers were not authorized to remove consumers' telephone numbers from company call lists and transferred "irate" customers to a manager who would then try to convince the consumer to schedule an appointment. *Id*, ¶ 24. MIC's telemarketers were trained to attempt to "turn around" consumers who had requested that the

company stop calling and, if unsuccessful, were reprimanded.  *Id*.  MIC placed more than 5.4

million calls to numbers listed on the NDNCR between February 2, 2009, and July 30, 2012.  *Id*,

¶ 25.  Thousands of consumers have filed complaints with the Federal Trade Commission and

other agencies regarding the unwanted and harassing telemarketing calls by MIC.  *Id*, ¶ 26.

MIC also made calls using an ATDS to cellular telephones whose owners did not

expressly consent to receive such calls, including Gesler.  *Id*, ¶ 27.  Consumers continued to

receive calls, despite requesting that MIC stop calling, until MIC ceased telemarketing

operations in October 2013.  *Id*, ¶ 28.  Many of the recipients of these calls did not consent to

receive such telephone calls.  *Id*, ¶ 29.

## III.  Individual Defendants

William Edwards holds the position of MIC's Chairman of the Board (*id*, ¶ 6); Jeffrey

Crilley holds the position of MIC's Chief Executive Officer (*id*, ¶ 7); James Shatz is MIC's

President of Operations and Information Technology (*id*, ¶ 8); and John Wesley Bailey III is

MIC's Chief Corporate Counsel (*id*, ¶ 9).  Plaintiffs allege that all four individual defendants:

> 30.  . . . acting alone or in concert with others, had the authority
> and responsibility to prevent or correct unlawful telemarketing
> practices of Defendant MIC, and formulated, directed, controlled
> and participated in the acts and practices of Defendant MIC that
> violated the TCPA, including the acts and practices set forth in this
> Complaint.
>
> 31. . . . directly and personally participated in, ratified, directed
> and/or authorized the conduct constituting the statutory violations
> alleged herein.
>
> 32.  . . . personally established, approved, and ratified Defendant
> MIC's policies and practices, oversaw operations and were directly
> involved in the business practices that violated the TCPA.
>
> 33. . . . were all personally and actively involved in managing the
> operations of Defendant MIC, and did not treat Defendant MIC as
> a passive investment. . . .

36. . . . personally received numerous emails concerning requests to stop the calls by members of the Internal Do-Not-Call Class, but, undaunted, . . . nonetheless continued to cause Defendant MIC to make telemarketing calls with its Do-Not-Call lists disabled. . .

39. . . .retain ownership of some of the loans made by Defendant MIC.

In addition, plaintiffs allege that Crilley, Shatz, and Bailey:

35. . . .personally devised and executed numerous telemarketing campaigns in which Defendant MIC deliberately "turned off" all Do-Not-Call lists, with the aim of making telemarketing calls to consumer[s] who had previously asked Defendant MIC to stop calling or had registered their numbers on the [NDNCR] . . .

Edwards allegedly ratified all actions by Crilley, Schatz, and Bailey.  *Id.*

## DISCUSSION

### I. <u>Motion to Dismiss</u>

#### A. <u>Personal Jurisdiction</u>

The individual defendants seek to dismiss this action pursuant to FRCP 12(b)(2) based on lack of personal jurisdiction.  All of them are residents of Florida, conduct all of their MIC-related business in Florida, have never owned any property in Oregon, have never conducted any activities individually in Oregon, have never traveled to Oregon for any reason, have never done any business in Oregon except through MIC, and have never participated in a telephone call to Oregon.  Edwards Decl. (docket #47), ¶¶ 2-8; Crilley Decl. (docket #48), ¶¶ 2-8; Shatz Decl. (docket #49), ¶¶ 2-8; Bailey Decl. (docket #50), ¶¶ 2-8.  Their only contact with Oregon is through their alleged participation in MIC's telemarketing scheme directed to Oregon and other states which they contend is insufficient to invoke personal jurisdiction over them in Oregon.

#### 1. <u>Legal Standard</u>

When no federal statute governs personal jurisdiction, the district court applies the law of the forum state.  *See Panavision Int'l, L.P. v. Toeppen*, 141 F3d 1316, 1320 (9th Cir 1998)

(applying California's long-arm statute).  "Oregon's long-arm statute confers jurisdiction to the extent permitted by due process."  *Gray & Co. v. Firstenberg Mach. Co.*, 913 F2d 758, 760 (9th Cir 1990), citing ORCP 4 and *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or 381, 381, 657 P2d 211, 212 (1982).  Federal due process requires that an out-of-state defendant have at least "minimum contacts" with the forum state so that "the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F3d 797, 801 (9th Cir 2004), quoting *Int'l Shoe Co. v. Washington*, 326 US 310, 316 (1945).  There are two kinds of personal jurisdiction:  general and specific jurisdiction.

Because plaintiffs do not assert general jurisdiction, this court has personal jurisdiction over non-resident defendants if the "controversy is related to or 'arises out of' a defendant's contacts with the forum."  *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 US 408, 414 (1984), quoting *Shaffer v. Heitner*, 433 US 186, 204 (1977).  The Ninth Circuit uses the following three-part test to analyze whether a party's minimum contacts meet the due process standard for the exercise of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Core-Vent Corp. v. Nobel Indus., AB*, 11 F3d 1482, 1485 (9th Cir 1993), quoting *Lake v. Lake*, 817 F2d 1416, 1421 (9th Cir 1987).

"The plaintiff bears the burden of satisfying the first two prongs of the test."

*Schwarzenegger*, 374 F3d at 802 (citation omitted). "If the plaintiff fails to satisfy either of these

prongs, personal jurisdiction is not established in the forum state. If the plaintiff succeeds in

satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a

compelling case' that the exercise of jurisdiction would not be reasonable. *Id*, quoting *Burger*

*King Corp. v. Rudzewicz*, 471 US 462, 476-78 (1985).

If the district court decides a motion to dismiss for lack of personal jurisdiction without

an evidentiary hearing, such as here:

> then the plaintiff need only make a prima facie showing of the
> jurisdictional facts. Absent an evidentiary hearing this court only
> inquire[s] into whether [the plaintiff's] pleadings and affidavits make a
> prima facie showing of personal jurisdiction. Uncontroverted allegations
> in the plaintiff's complaint must be taken as true. Conflicts between the
> parties over statements contained in affidavits must be resolved in the
> plaintiff's favor.

*Boschetto v. Hansing*, 539 F3d 1011, 1015 (9th Cir 2008) (alterations in original; internal

quotation marks and citations omitted), *cert. denied*, 555 US 1171 (2009).

## 2. Fiduciary Shield Doctrine

The individual defendants initially contend that they are not subject to personal

jurisdiction in Oregon based on the "fiduciary shield doctrine." "Under the fiduciary shield

doctrine, a person's mere association with a corporation that causes injury in the forum state is

not sufficient to permit that forum to assert jurisdiction over the person." *Davis v. Metro Prods.,*

*Inc.*, 885 F2d 515, 520 (9th Cir 1989). However, the fiduciary shield may be disregarded "in

cases in which the corporation is the agent or alter ego of the individual defendant . . . or where

there is an identity of interests between the corporation and the individuals." *Id* at 520-21

(citations omitted).

Here plaintiffs allege that MIC "is an alter ego of" the individual defendants based on "a unity of interest and ownership," "commingling of property rights or interests," and acting "in concert" in the TCPA violations.  Second Amended Complaint, ¶ 38.  As defendants contend, those allegations are too conclusory to pass muster, even at the pleading stage.

Even so, the fiduciary shield doctrine is not a question of constitutional significance and does not limit personal jurisdiction in states that have statutes extending jurisdiction to the limits of due process.  *Davis*, 885 F2d at 522 (concluding that Arizona's "long-arm" statute extended jurisdiction to constitutional due process limits and was not limited by the fiduciary shield doctrine).  Instead, "[e]ach defendant's contacts with the forum State must be assessed individually."  *Id* at 521 (internal quotation marks and citation omitted).  Similar to Arizona, Oregon's long-arm statute extends jurisdiction to the limits of constitutional due process.  Accordingly, as this court has recognized, in Oregon "there is no fiduciary shield protection and the court may assert personal jurisdiction over the individuals."  *Garrison v. Bally Total Fitness Holding Corp.*, No. 04-1331-PK, 2005 WL 3143105, at *2 (D Or Nov. 23, 2005).

Urging this court to reach a contrary conclusion, the individual defendants cite several decisions to invoke fiduciary shield protection in Oregon.  *Wong v. Wong*, 134 Or App 13, 18, 894 P2d 519, 522 (1995) (in the absence of evidence that the defendant acted as the "alter ego" of the partners, signing a letter in his capacity as president was not an act taken "by him individually" and could not constitute purposeful contact with Oregon); *Sidco Indus., Inc. v. Wimar Tahoe Corp.*, 768 F Supp 1343, 1349 (D Or 1991) ("corporate officer who has contact with a forum only in performance of his official duties is not subject to the personal jurisdiction of the courts in that forum"); *Pacific Cornetta, Inc. v. Jung*, 218 FRD 250, 255 (D Or 2003) (dismissing corporate officers and principals on the grounds that actions taken by them in "their

official capacities as representatives of the companies are insufficient to create a basis for jurisdiction"). None of those cases, however, address jurisdiction over persons who allegedly violated the TCPA or disregard Oregon's long-arm statute. As discussed below, corporate officers may be held individually liable under the TCPA if, as alleged here, they personally participated in or otherwise authorized the commission of wrongful acts, even if done on behalf of a corporation. Thus, the fiduciary shield doctrine does not protect the individual defendants from being subjected to personal jurisdiction in Oregon for alleged violations of the TCPA. Instead, the question is whether asserting personal jurisdiction over them under Oregon's long-arm statute comports with the due process requirements of the United States Constitution, as discussed below.

### 3. **Specific Personal Jurisdiction**

#### a. **Purposeful Direction**

The first prong for specific jurisdiction contains two distinct concepts: purposeful availment and purposeful direction. *Schwarzenegger*, 374 F3d at 802. The purposeful availment analysis most often applies to suits sounding in contract, while the purposeful direction analysis more readily applies in suits sounding in tort, as here. *Id* (citations omitted). Purposeful direction is analyzed using a three-part "effects test" requiring that the defendant allegedly: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F3d 1218, 1228 (9th Cir 2011) (internal quotation marks omitted), *cert. denied*, 132 S Ct 1101 (2012). The test may be satisfied even if the defendant has no physical contact with the forum state. *See, e.g.*, *Schwarzenegger*, 374 F3d at 803.

Plaintiffs allege that the individual defendants purposefully directed their activities to Oregon because they formulated, directed, implemented, and ratified a telemarketing scheme aimed at all 50 states. Given that each telephone number required an area code, and each area code is associated with a specific state, plaintiffs assert that this planning and programming resulted in the individual defendants intentionally targeting Oregon as one of the 50 states included in their telemarketing scheme. As a result, they reasonably should have known that telemarketing to Oregon telephone numbers would cause harm to persons in Oregon.

The individual defendants respond first that, in the era of cellular telephones, not every telephone number with an Oregon area code belongs to a person located in Oregon. Although true, many telephone numbers with an Oregon area code in fact are located in Oregon, such that the individual defendants knew or should have known that the telemarketing scheme was aimed at persons in Oregon.

Second, the individual defendants argue that their mere oversight of MIC's telemarketing operations is an insufficient basis on which to impose personal liability on them for violations of the TCPA. As discussed below, the Second Amended Complaint contains sufficient allegations of personal participation by the individual defendants to state a claim against them under the TCPA. These allegations are sufficient to satisfy the purposeful direction prong of the "effects test."

### b. Arising out of Forum Related Activities

In determining whether a plaintiff's claim arises out of the defendant's conduct directed towards the forum, the Ninth Circuit follows the "but for" test. *Myers v. Bennett Law Offices*, 238 F3d 1068, 1075 (9th Cir 2001). Plaintiffs must show that they would not have suffered an injury "but for" the defendants' forum-related conduct. *Id.*

Plaintiffs allege that the individual defendants designed, implemented, and ratified telemarketing practices that MIC directed at Oregon residents.  Thus, but-for their conduct, no injury would have been suffered by plaintiffs.  Thus, this second prong for specific jurisdiction is met.

### c.  Reasonable and Fair to Assert Jurisdiction

Since plaintiffs have made a *prima facie* showing that specific jurisdiction exists, the burden shifts to the individual defendants to make a "compelling case" that the exercise of personal jurisdiction over them would be unreasonable.  *Tech Heads, Inc. v. Desktop Serv. Ctr., Inc.*, 105 F Supp2d 1142, 1052 (D Or 2000).  The reasonableness of the exercise of personal jurisdiction is dependent on seven factors:

> (1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Dole Food Co., Inc. v. Watts*, 303 F3d 1104, 1114 (9th Cir 2002).

### i. Purposeful Injection

If a court determines that a defendant has purposefully directed its actions at the forum state, as discussed above, then the purposeful injection factor favors the plaintiff.  *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F3d 1066, 1080 (9th Cir 2011) (citation omitted) ("Actions directed at a forum resident expected to cause harm in the forum constitute purposeful injection.").  Accordingly, this factor favors jurisdiction in Oregon.

///

///

### ii. **Burden on Defendant**

All of the individual defendants reside in Florida and will be burdened by defending this case in Oregon. However, given the current "'advances in transportation and telecommunications and the increasing interstate practice of law, any burden [of litigation in a forum other than one's residence] is substantially less than in days past.'" *Id* at 1080 (alterations in original; additional citations omitted), quoting *Menken v. Emm*, 503 F3d 1050, 1060 (9th Cir 2007); *see also Tech Heads, Inc.*, 105 F Supp2d at 1052 ("air travel is neither prohibitively expensive nor time consuming, and [the defendant] has retained local counsel"); *Am. Auto. Ass'n, Inc. v. Darba Enters., Inc.*, No. C 09-00510 SI, 2009 WL 1066506, at *6 (ND Cal April 21, 2009) (same). "Any burden on [defendants] can be reduced by conducting their depositions in Florida and through the use of technology." *Alt. Legal Sol'ns v. Ferman Mgmt. Servs. Corp.*, No. 07-880-ST, 2008 WL 65584, at *9 (D Or. Jan. 4, 2008). Accordingly, this factor is neutral.

### iii. **Sovereignty Concerns**

The individual defendants argue that Florida has an interest in regulating Florida-based activities. However, the concern over sovereignty is whether Oregon's exercise of jurisdiction over a Florida resident would conflict with Florida state law. *Am. Auto. Ass'n*, 2009 WL 1066506, at *6. Since the TCPA is a federal law, no conflict with Florida state law exists. Accordingly, this factor favors jurisdiction in Oregon.

### iv. **Forum's Interest in Adjudication**

The Ninth Circuit assumes that a forum state "'maintains a strong interest in providing an effective means of redress for its residents tortiously injured.'" *Panavision*, 141 F3d at 1323, quoting *Gordy v. Daily News, L.P.*, 95 F3d 829, 836 (9th Cir 1996). Accordingly, this factor favors jurisdiction in Oregon.

### v. **Efficient Judicial Resolution**

This factor focuses on the location of the evidence and witnesses.  As when determining the burden on defendant, this factor "is no longer weighed heavily given the modern advances in communication and transportation."  *Id* at 1323 (citation omitted).  Since most evidence in this case may be produced electronically and since key depositions may be taken in Florida or elsewhere through the use of technology, this factor is neutral.

### vi. **Burden on Plaintiffs**

Plaintiffs will be burdened by litigating this case in Florida.  However, "in this circuit, the plaintiff's convenience is not of paramount importance."  *Dole Food Co.*, 303 F3d at 1116 (citation omitted).  Accordingly, this factor is neutral.

### vii. **Alternative Forum**

Florida is an alternative forum.  However, the existence of an alternative forum only becomes an issue "when the forum state is shown to be unreasonable."  *CollegeSource*, 653 F3d at 1080 (internal quotation marks and citations omitted).  The individual defendants have not established that Oregon is an unreasonable forum.

### viii.  **Conclusion**

Weighing these seven considerations, the individual defendants fail to present a compelling case that the exercise of jurisdiction over them in Oregon would be unreasonable.  Therefore, their motion to dismiss based on the lack of personal jurisdiction is denied.

### B.  **Failure to State a Claim**

Even if personal jurisdiction exists over them, the individual defendants seek dismissal of this action pursuant to FRCP 12(b)(6) for failure to state a claim for violating the TCPA.  First, they assert that plaintiffs fail to identify any telephone number that was called in violation of the

TCPA.  In support, they cite a district court case which required the plaintiff to plead her cellular telephone number; otherwise "TCPA defendants are forced to make educated guesses as to which telephone number belongs to a newly filed plaintiff."  *Strand v. Corinthian Colleges, Inc.*, No. 1:13-cv-1235, 2014 WL 1515494, at *3 (WD Mich Apr. 17, 2014).

However, *Strand* is contrary to most other district courts, including many in the Ninth Circuit, that do not require such detail at the pleading stage in order to provide adequate notice to a TCPA defendant.  *Crawford v. Target Corp.*, No. 3:14-CV-0090-B, 2014 WL 5847490, at *3-4 (ND Tex Nov. 10, 2014) (rejecting *Strand* and finding that "a plaintiff's specific telephone number is not essential to providing a defendant notice of the conduct charged"); *Baker v. Caribbean Cruise Line, Inc.*, No. CV 13-8246-PCT-PGR, 2014 WL 880634, at *3 (D Ariz Mar. 6, 2014); *Manfred v. Bennett Law, PLLC*, No. 12-CV-61548, 2012 WL 6102071, at *2 n2 (SD Fla Dec. 7, 2012) ("Plaintiff need not allege his specific cellular telephone number.  The statute simply states that the call must be made to 'any telephone number assigned to a  . . . cellular telephone service.'"); *Robinson v. Midland Funding, LLC*, No. 10-cv-2261-MMA(AJB), 2011 WL 1434919, at *3 (SD Cal Apr. 13, 2011) ("federal 'notice pleading standards do not require a plaintiff to allege details at the pleading state about the time and context' of every telephone call"), quoting *Kramer v. Autobytel, Inc.*, No. 10-cv-02722 CW, 2010 WL 5463116, at *6 (ND Cal Dec. 29, 2010); *Reyes v. Saxon Mortg. Servs., Inc.*, No. 09-cv-1366-DMS(WMC), 2009 WL 3738177, at *4 (SD Cal Nov. 5, 2009) (TCPA claim adequately stated by alleging that the defendant "frequently made calls to Plaintiff's cell phone using an automatic telephone dialing system (including an automated dialing machine, dialer, and auto-dialer) and an artificial or prerecorded voice").

Here plaintiffs have made sufficient factual allegations regarding defendants' calls in violation of the TCPA to survive a motion to dismiss. "[I]f there is a question about the phone number at issue, it can be addressed through discovery." *Jackson v. HSBC Mortg. Servs., Inc.*, No. 2:14-CV-1240-RDP, 2014 WL 5100089, at *4 (ND Ala Oct. 10, 2014); *see also Sprogis v. Suntrust Bank*, No. 6:13-CV-635-Orl-37, 2013 WL 2456090, at *2 (MD Fla June 6, 2013) (information such as the frequency of the calls, the date of the class, and the telephone number from which the call were received "is more likely to be in Defendant's records and accessible through discovery").

Second, the individual defendants argue that the Second Amended Complaint fails to allege facts sufficient to support individual liability for violating the TCPA. As a general rule of agency law, the personal liability of a corporate director or officer must be "founded upon specific acts by the individual director or officer." *United States v. Reis*, 366 F App'x 781, 782 (9th Cir 2010). Although the Ninth Circuit has not ruled on this issue, numerous district courts have held that corporate actors may be held individually liable for violating the TCPA where they "'had direct, personal participation in or personally authorized the conduct found to have violated the statute.'" *Sandusky Wellness Center, LLC v. Wagner Wellness, Inc.*, No. 3:12-CV-2257, 2014 WL 1333472, at *3 (ND Ohio Mar. 28, 2014), quoting *Texas v. Am. Blastfax, Inc.*, 164 F Supp2d 892, 898 (WD Tex 2001); *see also Jackson Five Star Catering, Inc. v. Beason*, No. 10-10010, 2013 WL 5966340, at *4 (ED Mich Nov. 8, 2013) (personal participation in the payment for and authorization of fax ads is sufficient to render a corporate officer liable under the TCPA); *Van Sweden Jewelers, Inc. v. 101 VT, Inc.*, No. 1:10-cv-253, 2012 WL 4074620 (WD Mich June 21, 2012); *Maryland v. Universal Elections*, 787 F Supp2d 408, 415-16 (D Md 2011) ("[I]f an individual acting on behalf of a corporation could avoid individual liability, the

TCPA would lose much of its force."); *Versteeg v. Bennett, Deloney & Noyes, P.C.*, 775 F

Supp2d 1316, 1321 (D Wyo 2011); *Baltimore-Wash. Tel. Co. v. Hot Leads Co.*, 584 F Supp2d

736, 745 (D Md 2008) (observing that if the defendants, who were the same defendants as in

*American Blastfax*, "actually committed the conduct that violated the TCPA, and/or . . . actively

oversaw and directed the conduct," they could be held individually liable for the statutory

violations); *Covington & Burling v. Int'l Mktg. & Research, Inc.*, No. CIV A 01-0004360, 2003

WL 21384825, at *6 (DC Super Apr. 17, 2003) (holding that corporate executives were

personally liable because they "set company policies and [oversaw] day-to-day operations" and

were "clearly involved in the business practices" that violated the TCPA).  Where courts have

declined to find personal liability, there has been little evidence of the corporate officer's direct

participation in the wrongdoing.  *See, e.g., Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-

61936-CIV-SCOLA, 2013 WL 1283885 (SD Fla Mar. 27, 2013).

As noted by defendants, MIC was a large operation with many employees, and plaintiffs

do not allege that any of the individual defendants ever placed or participated in a telemarketing

call.  However, plaintiffs do allege that the individual defendants were responsible for designing

and implementing all activity by MIC's telemarketers, including deliberately turning off all Do-

Not-Call lists.  Second Amended Complaint, ¶ 35.  In addition, three of them "personally

received numerous emails concerning requests to stop the calls by members of the Internal Do-

Not-Call Class," but ignored them and continued to cause MIC to make telemarketing calls with

its Do-No-Call lists disabled.  *Id*, ¶ 36.  These allegations go well beyond the bare assertions in

*Mais*, for example, that the defendant, who was vice president and 20% owner, controlled and

authorized the policies and practices regarding the TCPA.

The evidence may indeed prove that the individual defendants did not personally play any role in causing the TCPA violations. However, unlike many of the cases cited by defendants which were decided on summary judgment motions, this motion is directed only at allegations which must be accepted as true. In that regard, this case is more analogous to *L&A Designs, LLC v. Xtreme ATVs, Inc.,* 860 F Supp2d 1196, 1200 (D Or 2012), which found specific personal jurisdiction over a non-resident web designer who intentionally directed her actions towards Oregon by designing an interactive corporate website that allegedly infringed plaintiff's trademark. The allegation that the defendant "personally" designed the website is similar to plaintiffs' allegations that the individual defendants "personally" participated in the illegal conduct. In other words, the individual defendants are alleged to be primary participants in the TCPA violations, much as a puppeteer pulls a puppet's strings, going well beyond the routine functions of corporate officers and, thus, knew that the alleged conduct would cause harm to Oregon residents.

Finally, defendants also contend that it is impossible for them to discern which of them is alleged to have done what because they are improperly lumped together as committing vague, general acts. However, the allegations in the Second Amended Complaint do differentiate between the individual defendants. In addition, plaintiffs point to information in the public domain, as well as pleadings and non-confidential deposition testimony in another case, that support every allegation, including specific conduct by each of the individual defendants. Daudt Decl. (docket #30), Ex. E (Chart). It is disingenuous at this point for the individual defendants to rely on FRCP 8(a) to claim that the allegations are inadequate for them to form a response.

Thus, the individual defendants' motion to dismiss for failure to state a claim, joined by MIC, is denied.

## II.  <u>Motion to Strike Class Allegations</u>

Plaintiffs seek to represent three putative classes defined as follows:

> Cell Phone Class: All persons in the United States to whom:
> (a) Defendants made one or more non-emergency telephone calls;
> (b) to their cellular telephone number; (c) through the use of an
> automatic telephone dialing system; and (d) at any time in the
> period that begins four years before the date of filing this
> Complaint to trial.

> Internal Do-Not-Call Class: All persons in the United States who:
> (a) received more than one telemarketing call, initiated by
> Defendants; (b) more than 30 days after requesting not to receive
> further telemarketing calls; (c) in a 12-month period; (d) on their
> cellular telephone line or residential telephone line; and (e) at any
> time in the period that begins four years before the date of filing
> this Complaint to trial.

> National Do-Not-Call Class: All persons in the United States who:
> (a) received more than one telephone solicitation call, initiated by
> Defendants; (b) in a 12-month period; (c) on their cellular
> telephone line or residential telephone line; (d) whose cellular or
> residential telephone line number(s) appear on the [NDNCR];
> and (e) at any time in the period that begins four
> years before the date of filing this Complaint to trial.

Second Amended Complaint, ¶ 64.

Gesler seeks to represent the Cell Phone Class; Gesler and Leubben seek to represent the

Internal Do-Not-Call Class; and Ott seeks to represent the National Do-Not-Call Class.

Pursuant to FRCP 12(f), MIC moves to strike the class action allegations in their entirety

because:  (1) each class is unascertainable by encompassing a substantial number of individuals

who suffered no harm and, thus, lack standing; (2) individual issues will impermissibly

predominate over common issues; and (3) a class action is not the superior method of

adjudication.  Plaintiffs oppose this motion on the basis that it is premature prior to

commencement of discovery and that the classes are ascertainable.

Class allegations may be stricken at the pleading stage. *Kamm v. Cal. City Dev. Co.*, 509 F2d 205, 212 (9th Cir 1975). However, motions to strike class allegations are generally disfavored because "a motion for class certification is a more appropriate vehicle" for testing the validity of class claims. *Thorpe v. Abbott Lab., Inc*., 534 F Supp2d 1120, 1125 (ND Cal 2008). Such motions are granted only where "the complaint demonstrates that a class action cannot be maintained." *Tietsworth v. Sears, Roebuck & Co.*, 720 F Supp2d 1123, 1146 (ND Cal 2010). The "'granting of motions to strike class allegations before discovery and in advance of a motion for class certification is rare'" and has happened only in those limited circumstances when "the class definition is obviously defective in some way." *Perkins v. LinkedIn Corp.*, No. 13-CV-04304-LHK, 2014 WL 2751053, at * 20 (ND Cal June 12, 2014), quoting *Lyons v. Bank of Am., NA*, No. C 11-1232 CW, 2011 WL 6303390, at *7 (ND Cal. Dec. 16, 2011).

This is not the first TCPA class action brought against MIC. In June 2013, the same counsel representing plaintiffs in this action filed a putative TCPA class action against MIC in King County, Washington Superior Court, which MIC removed in July 2013 to the Western District of Washington. *Southwell v. Mortg. Investors Corp. of Ohio, Inc.*, No. 13-1289-MJP ("Washington Action"). Plaintiffs in the Washington action proposed to certify three classes, a Washington Class, a National Do-Not-Call Class, and an Internal Do-Not-Call Class. The latter two classes are the same as two of the proposed classes in this action. On August 12, 2014, Chief Judge Marsha J. Pechman denied plaintiffs' Motion for Class Certification based on plaintiffs' failure to demonstrate numerosity by a preponderance of the evidence and based on the predominance of individual issues of consent for the Internal Do-Not-Call class. *Southwell v. Mortg. Investors Corp. of Ohio, Inc.*, No. C13-1289-MJP, 2014 WL 3956699 (WD Wash Aug. 12, 2014) ("Class Certification Order"); Exposito Decl. (docket #52), Ex. A. Two days later

Judge Pechman granted in part and denied in part defendants' Motion for Summary Judgment based on a factual issue as to whether MIC qualified for the TCPA's "Safe Harbor" defense and on a consumer's ability to revoke any purported consent by making a company-specific do-not-call request. *Southwell*, No. C13-1289-MJP, 2014 WL 4057166 (WD Wash Aug. 14, 2014) ("Summary Judgment Order"); Daudt Decl. (docket #62), Ex. 1. She later denied plaintiffs' motion to amend the complaint to add Ott as a plaintiff. On September 10, 2014, the parties dismissed the Washington Action with the right to appeal (described by the parties as a "headless" class action).

This action filed by three Oregon citizens is substantially identical to the Washington Action, with two principal differences. First, this action names four MIC employees and executives as individual defendants in addition to MIC. Second, it includes a Cell Phone Class.

MIC's motion rests heavily on the Class Certification Order entered by Judge Pechman in the Washington Action denying class certification of two of the three putative classes. Except for the substitution of the proposed class representatives, those two classes are identical to the Internal Do-Not-Call and National Do-Not-Call classes in this action. After full discovery, Judge Pechman concluded that plaintiffs had failed to demonstrate numerosity under FRCP 23(a) by a preponderance of the evidence. Class Certification Order, at *2. In the alternative, she concluded that an Internal Do-Not-Call class cannot be certified under FRCP 23(b) because individual issues of consent cannot be resolved on a classwide basis, defeating predominance. *Id*, at *6. However, she ruled that consent does not present a barrier to certification of a National Do-Not-Call Registry class because MIC produced no evidence of "the written permission required to exempt it from NDNCR restrictions." *Id*, at *5.

Although collateral estoppel principles cannot bind members of putative classes that were never certified, federal courts are expected "to apply principles of comity to each other's class certification decisions when addressing a common dispute." *Smith v. Bayer Corp.*, 131 S Ct 2368, 2382 (2011). This is due to the "policy concerns" that arise when class counsel makes repeated efforts to certify the same class "by the simple expedient of changing the named plaintiff in the caption of the complaint." *Id* at 1281 (internal quotation marks and citation omitted). Applying the principles of comity in order to save the resources of the courts and parties, this court views the Class Certification Order in the Washington Action as a rebuttable presumption against certification of the same classes in this court. *See Baker v. Microsoft Corp.*, 851 F Supp2d 1274, 1278 (WD Wash 2012).

Here, as in *Baker*, another court has denied class certification of two of the virtually same classes. Indeed, this action was filed only after Judge Pechman rejected an attempt to add Ott as a proposed class representative in the Washington Action. As the Supreme Court explained, "our legal system generally relies on principles of *stare decisis* and comity among courts to mitigate the sometimes substantial costs of similar litigation brought by different plaintiffs." *Smith*, 131 S Ct at 2381.

This court disagrees with the characterization by plaintiffs that Judge Pechman made only an evidentiary ruling and that plaintiffs should be allowed the opportunity in this case to obtain more information through additional discovery in order to bolster certification of the putative classes. The parties expended a substantial amount of time and resources over a full year litigating the Washington Action and developed an extensive record with thousands of pages of documents from MIC and extensive briefing on the class certification issues. Yet plaintiffs' proof of numerosity failed. This court cannot condone the effort by plaintiffs' counsel to make

an end-run around that adverse ruling by attempting to certify the same classes here with

different class representatives.

That being said, it is not evident on the face of the Second Amended Complaint that the

putative classes fail to meet the numerosity requirement of FRCP 23(a). To the contrary, it

alleges the "the Classes each have more than 1,000 members." Second Amended Complaint,

¶ 65. Therefore, a motion to strike is not the appropriate procedural vehicle to test the class

allegations with respect to numerosity, and MIC does not purport to do so. Instead, MIC

challenges the class allegations based on the lack of ascertainability, commonality, and

superiority. Judge Pechman did not address the Cell Phone Class which was not pled in the

Washington Action. In addition, she ruled in favor of plaintiffs on the FRCP 23(b) issue for the

National Do-Not-Call Class for which consent did "not appear to be a barrier to class

certification." Class Certification Order, at *5. Therefore, the court must address the challenges

made by MIC.

### A.  Ascertainability

First, MIC argues that the putative classes are not ascertainable because they contain

members who lack standing to assert a TCPA claim. That lack of standing is premised on

individuals who: (1) consented to be called or "opted in;" (2) had an existing business

relationship with MIC; (3) received calls on their business numbers; or (4) were called during the

30-day grace period for compliance with do-not-call requests. According to MIC, individuals

who fall into these categories do not have a viable TCPA claim.

Although not expressly required by FRCP 23, a proposed class must be ascertainable,

meaning that "membership must be determinable from objective, rather than subjective, criteria."

*Kristensen v. Credit Payment Servs.*, 2:12-CV-00528-APG, 2014 WL 1256035, at *6 (D Nev

Mar. 26, 2014), quoting *Xavier v. Phillip Morris USA Inc.*, 787 F Supp2d 1075, 1089 (ND Cal 2011). "The proposed class definition should describe a set of common characteristics sufficient to allow a prospective plaintiff to identify himself or herself as having a right to recover based on the description." *Id*, quoting *Vandervort v. Balboa Capital Corp.*, 287 FRD 554, 558 (CD Cal 2012).

Contrary to MIC's characterization, the Class Certification Order never decided whether the proposed classes were ascertainable because it only addressed the sufficiency of the plaintiffs' numerosity evidence. Judge Pechman stated only that the process used by the plaintiffs' expert to estimate the number of violations suffered from defects, including "the inability to ascertain whether the individuals had later consented to be called." Class Certification Order, at *4. Her use of the word "ascertain" in that context does not convert her ruling into more than a rejection of plaintiffs' evidence to support numerosity.

### 1. **Cell Phone Class**

The Cell Phone Class includes a set of characteristics – calls from MIC, initiated by an automatic telephone dialing system, to a cellphone, within the last four years – that allow prospective class members to identify themselves as having a right to recover under 47 USC § 227(b)(1)(A)(iii). Since that statute contains no exception for calls to a person with whom the telemarketer has an existing business relationship or to business numbers and contains no grace period, MIC's only basis for asserting that this class is not ascertainable is the inclusion of individuals who consented to receive calls.

Consent, however, does not create an ascertainability issue for several reasons. First, "the class definition does not turn on consent, and consent is more appropriately addressed under Rule 23(b)(3)'s predominance inquiry." *Kristensen*, 2014 WL 1256035, at *6.

Second, MIC erroneously contends that plaintiffs must allege and prove the lack of prior express consent.  In *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed App'x 598, 600 n1 (9th Cir 2011), the Ninth Circuit held that "'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof."  In support, it cited the FCC's conclusion "that the creditor should be responsible for demonstrating that the consumer provided prior express consent" because  the creditor is "in the best position to have records kept in the usual course of business showing such consent."  *In re Rules and Regulations Implementing the [TCPA]*, 23 FCC Rcd 559, 565 ¶ 10 (Jan. 4, 2008). Many district courts, including those in the Ninth Circuit, have followed *Grant.  Sailola v. Mun. Servs. Bureau*, Civ. No. 13-00544 HG-RLP, 2014 WL 3389395, at *7 (D Haw July 9, 2014); *Gaines v. Law Office of Patenaude & Felix, A.P.C.*, No. 13cv1556-JLS(DHB), 2014 WL 3894348, at *4 (SD Cal June 12, 2014); *Elkins v. Medco Health Solutions, Inc.*, No. 4:12CV2141 TIA, 2014 WL 1663406, at *6 (ED Mo Apr. 25, 2014) (citing cases); *Heinrichs v. Wells Fargo Bank, N.A.*, No. C 13-05434 WHA, 2014 WL 985558, at *2-3 (ND Cal Mar. 7, 2014); *Shupe v. JPMorgan Chase Bank of Ariz.*, No. CV 11-00501-TUC-RCC, 2012 WL 1344820, at *4 (D Ariz Mar. 14, 2012).

MIC, however, points to *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F3d 1036, 1043 (9th Cir 2012), *cert. denied*, 133 S Ct 2361 (2013), which stated, in the context of conditionally certified a class for a preliminary injunction, that "[t]he three elements of a TCPA claim are: (1) the defendant called a cellular telephone number; (2) using an [ATDS]; (3) without the recipient's prior express consent."  One district court has interpreted *Meyer*, contrary to *Grant*, to require a TCPA plaintiff to prove the lack of prior express consent.  *See Smith v. Microsoft Corp.*, 297 FRD 464, 471 (SD Cal 2014) ("*Meyer* mandates that it is Plaintiff's burden to show a

lack of express prior consent."). However, *Meyer* did not decide whether a plaintiff must affirmatively plead a lack of consent in order to survive a motion to strike at the pleading stage. In light of the specific ruling in *Grant* and the FCC's statements, *Smith* is not persuasive.

Since the face of the Second Amended Complaint does not reveal that MIC had express consent before it called cell phones, MIC's speculation that some members of the Cell Phone Class may have given their express consent is not sufficient to strike that class action allegation for lack of standing.

### 2. Internal Do-Not-Call Class

MIC argues that Internal Do-Not-Call Class is not ascertainable because it includes individuals who consented to be called, had an existing business relationship with MIC, received calls on business numbers, or were called within the 30-day grace period for compliance.

Contrary to MIC's argument, criterion (b) ("more than 30 days after requesting not to receive further telemarketing calls") in the proposed Internal Do-Not-Call class definition accounts for a 30-day grace period for MIC to process internal do-not-call requests. In addition, the class definition does not exclude people with whom MIC had an existing business relationship because a company specific do-not-call request, as required to satisfy criterion (b), terminates any established business relationship. *See* 47 CFR § 64.1200(f)(5)(i) (" The subscriber's seller-specific do-not-call request . . . terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.").

That leaves the issue of consent. MIC claims that the Internal Do-Not-Call Class includes individuals who made a do-not-call request, but later changed their minds and asked to be called, citing 47 CFR § 64.1200(d)(5):

(5) Affiliated persons or entities. In the absence of a specific
request by the subscriber to the contrary, a residential subscriber's
do-not-call request shall apply to the particular business entity
making the call (or on whose behalf a call is made), and will not
apply to affiliated entities unless the consumer reasonably would
expect them to be included given the identification of the caller
and the product being advertised.

Plaintiffs argue that potential violators have no defense on the basis of consent given the absence of the words "consent," "invitation," or "permission" anywhere in that regulation. However, when addressing whether common questions of law or fact predominate under FRCP 23(b)(3), Judge Pechman did "not read the regulation in the same way," explaining that "[t]he regulation clearly contemplates an exemption based on 'a specific request to the contrary,' with no restriction as to the form that the request takes." Class Certification Order, at *6. She interpreted both that regulation and a similar Washington statute as containing "consent defenses" which "raise the specter of individualized inquiries." *Id.*

Plaintiffs submit that Judge Pechman misread 47 CFR § 64.1200(d)(5) which states only that a consumer's request not to be called again applies only to the caller's "affiliated entities" if the consumer makes a "specific request" not to be called by affiliated entities. This is a disputed legal issue which generally should not be resolved on a motion to strike. In addition, were this court writing on a clean slate, it would agree with plaintiffs' interpretation. However, this court is compelled to honor the principles of comity and follow the ruling of the Washington Action unless and until that ruling is reversed on appeal. Even so, the issue of consent does not create an ascertainability problem that justifies striking class allegations, but "is more appropriately addressed under Rule 23(b)(3)'s predominance inquiry." *Kristensen*, 2014 WL 1256035, at *6.

### 3. <u>National Do-Not-Call Class</u>

MIC also contends that the National Do-Not-Call Class is not ascertainable for the same reasons as the Internal Do-Not-Call Class. In that regard, plaintiffs concede that this class

definition is deficient and should be amended to exclude individuals who received calls from

MIC within 30 days of registering on the NDNCR or who had an established business

relationship with MIC.  When courts have granted motions to strike class allegations for failure

to define an ascertainable class, they also have granted leave to amend.  *See Tietsworth*, 720 F

Supp2d at 1147.  Since this particular amendment is not futile, it will be allowed.

### B. <u>Commonality</u>

Although MIC styles its argument as one based on commonality, it is essentially an

argument based on predominance.  "The 'rigorous analysis' contemplated by the Supreme

Court's recent class certification rulings requires discovery and development of the record."

*Perkins*, 2014 WL 2751053, at *20, citing *Amgen Inc. v. Conn. Ret. Plans & Trust

Funds*, 133 S Ct 1184, 1194 (2013).  "[P]redominance requires a qualitative assessment

too; it is not bean counting."  *Butler v. Sears Roebuck & Co.*, 727 F3d 796, 801 (7th Cir 2013).

Thus, predominance questions are, by their nature, ill-suited to resolution on a motion to strike.

*Perkins*, 2014 WL 2751053, at *20.

As discussed above, the issue of consent infects all three classes:  "express consent" as an

affirmative defense (based on *Grant*) for the Cell Phone Class, a "specific request" (pursuant to

Judge Pechman's interpretation of 47 CFR § 64.1200(d)(5)) for the Internal Do-Not-Call Class,

and a "signed, written agreement" (under 47 CFR § 64.1200(c)(2)(ii)) for the National Do-Not-

Call Class.  MIC argues that individual issues of consent will necessarily predominate over

common issues for all three classes.

With respect to the Internal Do-Not-Call Class, Judge Pechman found "that the issue of

consent cannot be resolved on a classwide basis, but would instead require individual inquiries

into the circumstances under which calls were placed to each potential class member."  Class

Certification Order, at *6.  Her ruling was based on MIC's evidence "that it obtained consent from consumers from multiple sources: several webpages, responses to mailings, spontaneous calls seeking information, or prior business relationships" and "no single database in which the consent information upon which [it] relied is maintained."  *Id.*  There is no reason for this court to believe that MIC's evidence will differ in this action.  Therefore, applying the principles of comity, individualized issues of consent presented on the face of the Second Amended Complaint preclude a finding of commonality or typicality for the Internal Do-Not-Call Class.

However, the consent issue is quite different with respect to the other two putative classes.  This court "cannot determine from the face of the pleadings that a class is not certifiable as a matter of law, as there are factual and legal issues yet to be determined."  *Lyons v. Coxcom, Inc.*, 718 F Supp2d 1232, 1236 (SD Cal 2009).

With respect to the Cell Phone Class, unless and until MIC comes forward with some evidence that it received prior express consent before it called putative class members, there is no barrier to certification.  This is not a matter that can be resolved from the face of the Second Amended Complaint and, thus, is not a basis for striking those class allegations.

With respect to the National Do-Not-Call Class, the burden also falls on MIC to produce a signed, written consent from the person called.  Judge Pechman rejected MIC's purported evidence of consent because it "produced no evidence of the *written* permission required to exempt it from NDNCR restrictions.  As far as the NDNCR class is concerned, consent does not appear to be a barrier to class certification."  Class Certification Order, at *5.  On a motion to strike, this court cannot assume that MIC will resolve this evidentiary problem.

///

///

C. **Superiority**

MIC also argues that the class allegations should be stricken because they fail to show

that a class action is superior to other methods of adjudication.  Under FRCP 23(b)(3), the

matters pertinent to superiority include:

> (A) the class members' interests in individually controlling the
> prosecution or defense of separate actions; (B) the extent and
> nature of any litigation concerning the controversy already begun
> by or against class members; (C) the desirability or undesirability
> of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.

These four factors are "non-exhaustive."  *Local Joint Exec. Bd. of Culinary/Bartender*

*Trust Fund v. Las Vegas Sands, Inc.*, 244 F3d 1152, 1163 (9th Cir 2001).

When MIC initially filed its motion against the First Amended Complaint, it argued that

the alleged damages provide more than enough incentive for individual lawsuits.  At that time,

Leubben sought statutory damages of up to $225,000.00, and Gesler demanded up to

$195,000.00 in statutory damages.  If a class action is merely "just as good as" an alternative

method of handling the controversy, then certification is improper.  *Rutledge v. Electric Hose &*

*Rubber Co.*, 511 F2d 668, 673 (9th Cir 1975).

However, the Second Amended Complaint contains no allegations as to amount of

damages sought by each plaintiff, other than statutory damages of $500.00 per call and treble

damages.  To make that determination, plaintiffs need more information about the numbers of

illegal calls MIC made to class members which can only be obtained through discovery.  At this

point, the allegations do not defeat class certification.  *Compare Las Vegas Sands*, 244 F3d at

1163 (some class members who would recover "about $1,330" might forego individual suits

"because of the disparity between their litigation costs and what they hope to recover") *with*

*Zinser v. Accufix Research Inst., Inc.*, 253 F3d 1180, 1190-91 (9th Cir 2001) (when the alleged

minimum amount of damages to each class member was $50,000.00, the first factor "does not

argue persuasively in favor of class certification").

Furthermore, MIC ignores plaintiffs' other allegations of superiority, including

promotion of efficiency, conservation of judicial resources, deterrence of MIC's illegal activities,

and the manageability of the case.  Second Amended Complaint, ¶ 70.  Thus, there is no basis to

strike the class allegations on the basis of superiority.

### D.  Conclusion

Based on principles of comity regarding the lack of commonality, the class allegations

are stricken as to the Internal Do-Not-Call Class with prejudice and as to the National Do-Not-

Call Class without prejudice and with leave to amend.

### III.  Motion to Dismiss for Lack of Prosecution

Pursuant to FRCP 41(b), defendants move to involuntarily dismiss this action based on

plaintiffs' violation of the initial Discovery and Pretrial Scheduling Order requiring completion

of discovery and the filing of any motions by August 18, 2014 (docket #2).  In the four months

after filing, plaintiffs conducted no discovery until August 18, 2014, when they served discovery

requests on MIC with responses due by September 18, 2014.   Defendants complain that this

dilatory approach mirrors the same strategy of delay taken by plaintiffs' counsel in the

Washington Action.

Plaintiffs' counsel concedes that they overlooked the initial Discovery and Pretrial

Scheduling Order which was issued when the case was filed.  Daudt Decl. (docket #66), ¶ 3.

However, shortly after this case was filed, MIC filed a motion to dismiss or stay the case (docket

#14).  When plaintiffs filed a First Amended Complaint, the court struck MIC's pending motion

as moot (docket #22).  MIC and the individual defendants then filed the pending motions which

plaintiffs have opposed.  Anticipating that defendants would refuse to engage in discovery while their multiple motions were pending, plaintiffs they did not seek a timely FRCP 26(f) conference with defendants.  *Id*, ¶¶ 5-6.  Instead on September 8, 2014, plaintiffs filed a motion to extend the deadlines (docket #63), which this Court granted in part by striking the current case schedule and requiring the parties to file a proposed case schedule after ruling on the pending motions (docket #79).

FRCP 41(b) authorizes the court, on motion of a defendant, to dismiss with prejudice an action when the plaintiff "fails to prosecute or to comply with these rules or a court order."  "Dismissal is a harsh penalty and is to be imposed only in extreme circumstances."  *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F3d 1217, 1226 (9th Cir 2006) (internal quotation marks and citation omitted).  In determining whether to dismiss under FRCP 41(b), the court weighs five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives."  *Ferdik v. Bonzelet*, 963 F2d 1258, 1260-61 (9th Cir 1992) (internal quotation marks and citation omitted).  A court "may affirm dismissal where at least four factors support dismissal, or where at least three factors strongly support dismissal."  *Dreith v. Nu Image, Inc.*, 684 F3d 779, 788 (9th Cir 2011) (internal quotation marks and citation omitted).   "In addition, in order to warrant a sanction of dismissal, the party's violations must be due to willfulness or bad faith."  *Id* (citation omitted).

At least three of the factors weigh against dismissal, and none of them weigh heavily in favor dismissal.  This case has been pending only seven months, during which time

plaintiffs have diligently responded to each of defendants' numerous motions.  This case has not

unduly lingered on or interfered with management of the court's docket.  No trial date has been

set yet.  Defendants have suffered no actual prejudice since they likely would have objected to

beginning discovery while they had pending motions to stay and dismiss the case.  In fact, they

essentially received what their motions requested, namely a stay of this action until a ruling on

class certification in the Washington Action.  They cannot have taken any action in reliance on

any  failure by plaintiffs to prosecute this action because plaintiffs responded to each and every

one of their attempts to have it dismissed or stayed.  Furthermore, plaintiffs' counsel believe that

most of the documents responsive to their discovery requests have already been gathered,

reviewed, and produced by MIC in the Washington Action.  Since this is a putative class action

for violations of the TCPA, by definition it involves an issue of public concern that should be

resolved on the merits.  A variety of less severe sanctions, such as a warning, are more than

adequate to ensure that plaintiffs meet all future deadlines.  Finally, plaintiffs' counsel made a

mistake that was in no way willful or the result of bad faith.  Accordingly, dismissal based on

plaintiffs' failure to prosecute is not warranted.

///

///

///

///

///

///

///

///

33 – OPINION AND ORDER

## **ORDER**

Defendants' Motion to Dismiss for Failure to State a Claim (docket #33) is DENIED;

defendants' Motion to Strike Class Allegations (docket #51) is GRANTED in part as to the

Internal Do-Not-Call Class with prejudice and as to the National Do-Not Call Class without

prejudice and with leave to amend, and otherwise is DENIED; and defendants' Motion to

Dismiss for Lack of Prosecution (docket #57) is DENIED.

DATED  December 3, 2014.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge