UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

KELLY OTT and BENJAMIN GESLER, on behalf of themselves and all others similarly situated, and NANCY LUEBBEN,

    Plaintiffs,

    v.

MORTGAGE INVESTORS CORPORATION OF OHIO, INC., an Ohio corporation also doing business as MORTGAGE INVESTORS CORPORATION, AMERIGROUP MORTGAGE CORPORATION, VETERANS INFORMATION DEPARTMENT and VETERANS HOME LOANS,

    Defendants.

Case No. 3:14-cv-00645-ST

**OPINION AND ORDER**

**STEWART, Magistrate Judge:**

## INTRODUCTION

Plaintiffs filed this class action on April 18, 2014, alleging violations by defendants of the Telephone Consumer Protection Act, 47 USC § 227 *et seq* ("TCPA"), by means of a nationwide telemarketing scheme targeted at U.S. military veterans. In July 2015, plaintiffs sought this

court's preliminary approval of a Settlement Agreement. The Settlement Agreement requires Mortgage Investors Corporation of Ohio, Inc. ("MIC"), to pay $7,483,600 into a Settlement Fund to cover: (1) cash awards to settlement class members who submit claims; (2) court-approved attorney fees up to $1,870,900; (3) court-approved litigation expenses up to $147,063; (4) notice and claims administration costs of $1,190,000; and (5) incentive awards of $5,000 each to the two class representatives. If any amounts remain in the Settlement Fund as a result of uncashed checks, those funds will be disbursed "*cy pres*" in equal parts to: (1) Veterans Airlift Command, a non-profit charitable organization that provides free air transportation to wounded in combat and their families for medical and other compassionate purposes; and (2) Consumer Federation of America, a pro-consumer advocacy organization. No funds from the settlement will revert to MIC.

On July 20, 2015, the court granted preliminary approval of the Settlement Agreement and set a final approval hearing on November 24, 2015. Plaintiffs then sent a notice of the proposed settlement to class members and filed a Motion for Final Approval of Class Action Settlement (docket #140). At the hearing, Class Counsel advised that the settlement class contains 3,552,434 members, 3,080,000 of whom received direct notice of the settlement. Of those class members who received notice, none objected to the settlement, only 52 opted out, and 30,289 had submitted claims. Class Counsel estimates that each claimant will receive approximately $140.86.

Class Counsel also filed a Motion for an Award of Fees and Approval of Service Awards in Connection with the Settlement (docket #133), seeking an award of attorney fees of $1,870,900, representing 25% of the Settlement Fund, plus out-of-pocket expenses up to $147,063, and also seeking service awards of $5,000 each to plaintiffs Ott and Gesler.

## MOTION FOR FINAL APPROVAL

To approve a proposed settlement of a class action under FRCP 23(e), the court must find that the proposed settlement is "fair, adequate and reasonable." *Staton v. Boeing Co.*, 327 F3d 938, 959 (9th Cir 2003) (citation omitted). The assessment of fairness includes the balancing of several factors, including but not limited to:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F3d 1011, 1026 (9th Cir 1998) (citations omitted).

When reviewing a motion for approval of a class settlement, a court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties." *Officers for Justice v. Civil Serv. Comm'n of City and Cty. of S.F.*, 688 F2d 615, 625 (9th Cir 1982). A court must therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id*.

For the reasons stated by plaintiffs in their motion and by all parties at the hearing on November 24, 2015, including the lack of any objection by any class member, this court concludes that all factors strongly favor final approval of the Settlement Agreement and grants plaintiffs' motion.

///

///

///

3 – OPINION AND ORDER

# MOTION FOR AWARD OF FEES AND SERVICE AWARDS

I. **Attorney Fees**

　　A. **Legal Standard**

When their efforts result in the creation of a common fund that benefits plaintiffs and unnamed class members, class counsel have an equitable right to be compensated from that fund for their successful efforts in creating it. *Staton*, 327 F3d at 967, quoting *Boeing Co. v. Van Gemert*, 444 US 472, 478 (1980) ("lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole"); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F3d 1291, 1300 (9th Cir 1994) ("those who benefit in the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it") (citations omitted).

In common fund cases, district courts within the Ninth Circuit have discretion to use one of two methods to determine whether the request is reasonable: (1) percentage-of-the-fund; or (2) lodestar plus a risk multiplier. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F3d 935, 942 (9th Cir 2011) (citation omitted); *see also In re Mercury Interactive Corp. Sec. Litig.*, 618 F3d 988, 992 (9th Cir 2010). "Though courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result." *In re Bluetooth*, 654 F3d at 942 (citations omitted). Courts often prefer a percentage-of-the-fund model over a lodestar-multiplier approach in common fund cases where it is possible to ascertain the value of the settlement. *Id* ("Because the benefit to the class is easily quantified in common fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *In re Omnivision Techs., Inc.*, 559 F Supp2d 1036, 1046 (ND Cal 2008) ("[U]se of the percentage method in common fund cases appears to be dominant.").

B.  **Analysis**

In accordance with the Settlement Agreement, Class Counsel requests an award of attorney fees in the sum of $1,870,900, which is equal to 25% of the $7,483,600 Settlement Fund. They argue that this award is reasonable under—and warrants application of—the percentage-of-the-fund analysis, as confirmed by cross-checking it against the lodestar plus a risk multiplier analysis. At the hearing on the motion, this court expressed concern as to whether the requested attorney fee award was reasonable and requested Class Counsel to submit their time records for an *in camera* review. Based on a review of those time records and the supplemental briefing submitted by Class Counsel, this court concludes that the requested attorney fee award is not unreasonable.

1.  **Percentage-of-Fund**

In common fund cases such as this, the Ninth Circuit has established 25% of the common fund as the "benchmark" award for reasonable fee award. *In re Bluetooth*, 654 F3d at 942, citing *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F2d 1301, 1311 (9th Cir 1990).[1] Class Counsel's requested award is right at this "benchmark" for a reasonable fee award.

However, this "benchmark percentage should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *Six Mexican Workers*, 904 F2d at 1312 (J. Sneed, concurring). "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino v. Microsoft Corp.*, 290 F3d 1043, 1050–51 (9th Cir 2002). It can

---

[1] The Ninth Circuit has not adopted the approach by some other courts that calculate a percentage-of-recovery fee award based on the "net" common fund after deducting notice and claims administration expenses. *See In re Online DVD-Rental Antitrust Litig.*, 779 F3d 934, 953 (9th Cir 2015) (affirming attorney fee award "as a percentage of the total settlement fund, including notice and administrative costs, and litigation expenses"); *Powers v. Eichen*, 229 F3d 1249, 1258 (9th Cir 2000) (rejecting the requirement to base an award on a percentage of the net recovery, noting that "the reasonableness of attorney's fees is not measured by the choice of the denominator") (citation omitted).

"confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate." *In re Bluetooth*, 654 F3d at 945 (internal quotation marks and citation omitted).

### 2.     <u>Lodestar Cross-check</u>

The lodestar calculation begins with the multiplication of the number of hours reasonably expended by a reasonable hourly rate. *Hanlon*, 150 F3d at 1029. Class Counsel calculates the lodestar as $1,107,990 based on approximately 2,505 hours devoted to the investigation, litigation and resolution of this case (1,944.7 hours incurred in this case plus 561.9 hours incurred in the related Washington case, *Southwell v. Mortgage Investors Corp. of Ohio, Inc.*, No. C13-1289-MJP (WD Wash)). Based on that calculation, an attorney fee award equal to 25% of the Settlement Fund represents a modest multiplier of 1.69. However, as discussed below, this court calculates the lodestar as much lower than does Class Counsel.

#### a.     <u>Hourly Rates</u>

The first step in the lodestar analysis requires the court to determine a reasonable hourly rate for the fee applicant's services. The established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation. *Camacho v. Bridgeport Fin., Inc.*, 523 F3d 973, 979 (9th Cir 2008). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Id*, citing *Barjon v. Dalton*, 132 F3d 496, 500 (9th Cir 1997). The "relevant community" for this case is Portland, Oregon, where this court sits.

The best evidence of the prevailing rate in Portland, Oregon, is the periodic Economic Survey conducted by the Oregon State Bar ("OSB"). *Atlantic Recording Corp. v. Andersen*, No. CV 05-933-AC, 2008 WL 2536834, at *14 (D Or June 24, 2008), citing *Roberts v. Interstate*

*Distrib. Co.*, 242 F Supp2d 850, 857 (D Or 2002) (remaining citations omitted); *also see* U.S. Dist. Court., Dist. of Or., *Message from the Court Regarding Fee Petitions*, https://www.ord.uscourts.gov/index.php/court-info/court-policies/fee-petitions (last updated Feb. 6, 2013) ("Oregon Dist. Ct. *Message*"). The hourly rates charged for the attorneys and staff members working on this matter range from $100 to $760, with the majority of the work performed by attorneys at two law firms (Williamson & Williams and Terrell Marshall Law Group PLLC) in Seattle, Washington: Rob Williamson at $760/hour; Beth E. Terrell at $650/hour; Michael D. Daudt at $650/hour; and Jennifer Rust Murray at $500/hour. Terrell Decl. (docket #134), ¶ 19; Williamson Decl. (docket #135), ¶ 8. As Class Counsel concedes, these hourly rates are much higher than those reflected in the most recent 2012 OSB Economic Survey. Second Terrell Decl. (docket #143), ¶ 8.

Class Counsel asserts, however, that the "relevant community" is the Pacific Northwest region, including Seattle, Washington, and cites approval of similar hourly rates by federal courts in Western District of Washington and Northern District of California. Terrell Decl., ¶ 21; Williamson Decl., ¶ 10. However, those courts awarded hourly rates based on similar rates in their communities and have no relevance to determining the hourly rate where this court sits. For economic reasons, a law firm in a more expensive city, such as Seattle, may elect not to charge lower rates when filing a lawsuit in less expensive city, such as Portland. *See* Dubanevich Decl. (docket #146), ¶ 6. However, in the Ninth Circuit, it is the location of the litigation, not the location of the lawyer's office, that determines a reasonable hourly rate for an award of attorney fees. Other than an affidavit from local counsel who charged an hourly rate of $375 (Estok Decl. (docket #136), ¶ 10), Class Counsel has not submitted an affidavit from any other attorney attesting to the prevailing rates in this District for representation of class actions

by lawyers of reasonably comparable skill, experience, and reputation. *See Davis v. City & Cnty. of S.F.*, 976 F2d 1536, 1546 (9th Cir 1992), *vacated in part on other grounds upon denial of reh'g*, 984 F2d 345 (1993). Nor has Class Counsel submitted any evidence of hourly rate determinations in other class action cases in this District.

Class Counsel also note that they specialize in TCPA litigation on behalf of consumers and developed a nationwide reputation for excellence in this area. Terrell Decl., ¶ 7; Williamson Decl., ¶ 2. The Ninth Circuit instructs that "[r]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Barjon*, 132 F3d at 500. Local counsel, who incurred a mere 6.1 hours in this case, confirms that neither he nor his firm would have taken on this nationwide TCPA class action on its "own or with co-counsel who had less experience in that specialized area of law." Estok Supp. Decl. (docket #144), ¶ 3. However, Class Counsel fails to detail that no local counsel was willing or able to properly handle the case either on its own or as co-counsel. Indeed, several law firms in this District have a stellar reputation in the relevant legal community for handling class action cases, including TCPA cases. *See* Dubanevich Decl., ¶ 5. Without a showing that would allow this court to shift its focus away from this forum, the "relevant community" remains Portland, Oregon.

It must be noted that this class action started in Washington state. Class Counsel filed *Southwell*, a substantially similar TCPA class action case, against MIC in King County, Washington Superior Court, which MIC removed in July 2013 to the Western District of Washington. That court denied plaintiffs' Motion for Class Certification, granted in part defendants' Motion for Summary Judgment, and denied plaintiffs' Motion to Amend to add Ott

as a plaintiff, Class Counsel dismissed that action with the right to appeal. After receiving those adverse decisions, Class Counsel then filed this nearly identical action with three Oregon citizens as plaintiffs, individual defendants and a new cellphone class. Given the work already done in *Southwell*, Class Counsel likely preferred to retain passive local co-counsel in this District. But by choosing this District over any other available venue for this nationwide class action, Class Counsel took the risk of receiving a lower attorney fee award.

Class Counsel also provides no information supporting the $250 and $200 per hour billing rates for its many paralegals and legal assistants. Nor do plaintiffs provide any specific information about these individuals that would suggest expertise warranting hourly rates above the average charged for paralegals in Portland, Oregon. The 2012 OSB Economic Survey does not include data on paralegal rates, and no cases in this District have awarded rates for paralegals in the range requested by Class Counsel. Instead, there has been some suggestion within this District that paralegal rates should not exceed the average rate for a first-year associate. *See Knowledge Learning Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 3:10-cv-00188-ST, 2011 WL 2133824, at *6 (D Or Apr. 19, 2011) (reducing requested paralegal hourly rate from $215 and awarding hourly rate of $165 based on paralegal's extensive experience), adopted by Judge King (D Or May 27, 2011). This District also has recently found hourly rates between $90 and $100 reasonable for paralegal work. *See e.g. Salinas v. Beef Nw. Feeders, LLC*, No. CV-08-1514-PK, 2010 WL 1027529, at *10 (D Or Mar. 1, 2010) (approving paralegal rate of $125/hour).

By any measure, the hourly rates charged by Class Counsel greatly exceed what this court would award for similar work performed by attorneys of comparable skill, experience, and reputation in this community.

### b. Number of Hours

A court may award attorney fees only for the number of hours it concludes were reasonably expended on the litigation. *Hensley v. Eckerhart*, 461 US 424, 434 (1983) ("[Counsel] should make a good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary"). "Those hours may be reduced by the court where the documentation of the hours is inadequate; if the case was overstaffed and hours are duplicated; if the hours expended are deemed excessive or otherwise unnecessary." *Chalmers v. City of L.A.*, 796 F2d 1205, 1210 (9th Cir 1986), *amended in part on denial of reh'g en banc*, 808 F2d 1373 (1987), citing *Hensley*, 461 US at 433–34.

Since this court's review of the time records is only for the purpose of performing a cross-check on whether a 25% attorney fee award is reasonable, it need not perform a detailed analysis of the hours expended by Class Counsel. However, based on a cursory review of the time records submitted, this court easily concludes that the hours are excessive.

First of all, when applying a lodestar analysis, courts generally exclude time spent on clerical or ministerial tasks because such work is part of the attorney's overhead and is reflected in the hourly rate. *Missouri v. Jenkins,* 491 US 274, 288 n10 (1989) ( "[P]urely clerical or secretarial tasks should not be billed at a paralegal [or lawyer's] rate, regardless of who performs them"). "Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *Sterling Sav. Bank v. Sequoia Crossing, LLC*, No. 09–555–AC, 2010 WL 3210855, at *7 (D Or Aug.11, 2010); see also *Frevach Land Co. v. Multnomah Cty.*, No. 3:00-cv-01295-HU, 2001 WL 34039133, at *12 (D Or Dec. 18, 2001) (tasks such as proofreading, indexing, or assembling

documents are not compensable because they are overhead and thus already "reflected in the hourly billing rate."). Yet many hours incurred by many of the paralegals or legal assistants for Class Counsel involve such clerical work.

Second, the numbers of hours expended must be adequately documented. *Sterling Sav. Bank*, 2010 WL 3210855, at *5-6. This District has specifically cautioned against block billing and providing vague or otherwise inadequate descriptions of tasks because these practices greatly hinder the court's ability to assess the reasonableness of the time expended. *See* Oregon Dist. Ct. *Message*. Many of the billing entries by Class Counsel are vague. They begin with "analyzed issues," "strategized" or "worked on," followed by very general categories ("discovery requests," "depositions," "subpoenas," "expert witnesses" or a specific pleading) without further descriptive detail. It cannot be determined if the analysis, strategy, or work involved drafting, editing, legal research, conferring, musing, or something else. As a result, this court cannot determine whether the amount of time billed is reasonable for the described task.

Third, many more hours were expended on tasks than would be expected by lawyers with significant expertise in TCPA law which should be reflected in the hourly rated charge. When expertise warrants higher billable rates, that same expertise should result in a reduction in the number of hours required to prepare legal pleadings. Yet the greatest number of hours were billed by those with the highest hourly rates: 611.8 hours by Ms. Rust at $500/hour; 299.2 hours by Mr. Daudt at $650/hour; and 187 hours by Ms. Terrell at $650/hour. Moreover, Class Counsel spent excessive time on certain aspects of the case, such as drafting the Complaint which was substantially identical to the Complaint in *Southwell* (7.9 hours by MDD), preparing a two-page Joint Status Report filed September 25, 2014 (4.5 hours by BHC; 4.2 hours by MDD; 1.3 hours by BET), motions to extend deadlines (11.2 hours by BHC; 5.0 hours by MDD), and

preparing a Joint Status Report filed December 12, 2014 (2.4 hours by BHC; 6.7 hours by MDD; 0.1 hour by BET).

    **3.**    **Conclusion**

When applying what should be reasonable hourly rates to the number of hours that reasonably should be incurred in this case, Class Counsel's lodestar calculation is clearly too high. However, to account for the risk that Class Counsel assumed when taking this case on a contingent-fee basis, it is appropriate to apply a multiplier. *See Hopkins v. Stryker Sales Corp.*, No. 11–CV–02786–LHK, 2013 WL 496358, at *4 (ND Cal Feb. 6, 2013) ("The purpose of this multiplier is to account for the risk Class Counsel assumes when they take on a contingent-fee case.") (citation omitted). Provided that the multiplier falls within an acceptable range, the fees sought are reasonable. *Id*. In determining whether a multiplier is appropriate, courts consider the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id* (citations omitted).

"Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases." *Id*, at *4 (citation omitted); *Aboudi v. T-Mobile*, No. 12-cv-2126 BTM (NLS), 2015 WL 4923602, at *7 (SD Cal Aug. 18, 2015) (finding 2.24 multiplier reasonable); *see also Vizcaino*, 290 F3d at 1050 n4 (finding that, in approximately 83% of the cases surveyed by the court, the multiplier was between 1.0 and 4.0 with a "bare majority . . . 54% . . . in the 1.5–3.0 range").

Even if the lodestar calculation by Class Counsel is reduced by 50%, the multiplier would still be about 3.4 which is within a reasonable range. Given that 25% of the Settlement Fund is at the presumptively reasonable "benchmark" in the Ninth Circuit, the amount of attorney fees requested by Class Counsel is not unreasonable.

**II.     Costs**

Class Counsel also requests approval of $115,462.73[2] in litigation expenses, including expert witness fees ($70,420.48), deposition fees, mediation fees, electronic data expenses, travel costs for depositions and mediation (held in Tampa, Florida), filing fees, Westlaw research, PACER costs, messenger and process server charges, printing, copying, and postage. Terrell Decl., ¶ 25. Such costs are appropriate for reimbursement. *See In re United Energy Corp. Solar Power Modules Tax Shelter Inv. Sec. Litig.*, MDL No. 726, 1989 WL 73211, at *6 (CD Cal Mar. 9, 1989) (attorneys "whose efforts create a common fund for an identifiable class are entitled to recover their fees and costs from the class so benefited") (citations omitted). The court finds that Class Counsel's litigation expenses costs were incurred to benefit the class and are reasonable.

**III.    Class Representative's Service Awards**

The two Class Representatives, Ott and Gesler, also seek court approval of a $5,000 incentive award for each of them. "[N]amed plaintiffs, as opposed to designated class members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327 F3d at 977. "Incentive awards are fairly typical in class action cases." *Rodriguez v. West Publ'g Corp.*, 563 F3d 948, 958 (9th Cir 2009) (citations omitted).

---

[2] The Settlement Agreement authorizes litigation expenses up to $147,063 as approved by the court. However, Class Counsel have submitted support for expenses only in the amount of $115,462.73.

Generally speaking, incentive awards are meant to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaking in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Id* at 958–59. The district court, however, must "evaluate their awards individually" to detect "excessive payments to named class members" that may indicate "the agreement was reached through fraud or collusion." *Staton*, 327 F3d at 975. To assess whether an incentive payment is excessive, district courts balance "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *Id.*

A class representative must justify an incentive award through "evidence demonstrating the quality of plaintiff's representative service," such as "substantial efforts taken as class representative to justify the discrepancy between [the class representative's] award and those of the unnamed plaintiffs." *Alberto v. GMRI, Inc.*, 252 FRD 652, 669 (ED Cal 2008) (citation omitted). A $5,000 incentive award in this case is about 35 times greater than the estimated amount of a cash award to any class member. Neither of the Class Representatives have submitted declarations describing the time and effort spent on this case or otherwise explaining why this discrepancy is reasonable. However, Class Counsel represents that both Ott and Gesler "actively participated," in that they "responded to discovery requests, sat for depositions, met with Class Counsel, actively assisted in Class Counsel's investigation, and consulted with Class Counsel by telephone regarding mediation and the Settlement." Terrell Decl., ¶ 33. At the hearing, Class Counsel estimated that each Class Representative spent 10–15 hours on this case. The time records of Class Counsel confirm that Ott and Gesler produced documents, conferred

with Class Counsel, and sat for their depositions for 8.5 hours on March 16, 2015. Otherwise, whatever assistance they provided to Class Counsel is not clear from the time records.

Although Ott and Gesler had only limited involvement in this case, courts in the Ninth Circuit generally have found that $5,000 incentive payments are reasonable for similar levels of participation. *See*, *e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F3d 454, 463 (9th Cir 2000) (approving incentive awards of $5,000 each to the two class representatives of 5,400 potential class members in a settlement of $1.725 million); *Burden v. SelectQuote Ins. Servs.*, No. C 10–5966 LB, 2013 WL 3988771, at *6 (ND Cal Aug. 2, 2013) (awarding $5,000, rather than the requested $10,000, where the named plaintiff "was deposed twice, attended three settlement conferences, and spent a total of 80 hours" on the case); *Cicero v. DirecTV, Inc.*, No. EDCV 07–1182, 2010 WL 2991486, *7 (CD Cal July 27, 2010) (approving incentive awards of $5000 and $7,500 where the class representatives "actively participated in the action by assisting counsel and responding to discovery"); *Williams v. Costco Wholesale Corp.*, No. 02cv2003 IEG (AJB), 2010 WL 2721452, *7 (SD Cal July 7, 2010) (approving a $5,000 incentive award). Given their level of participation, assumption of the applicable risks and commitment to prosecute this case, the proposed incentive awards of $5,000 each to Ott and Gesler are not inherently unreasonable.

## **ORDER**

For the reasons set forth above, the Motion for Final Approval of Class Action Settlement (docket #140) and Motion for an Award of Fees and Approval of Service Awards in Connection with the Settlement (docket #133) are GRANTED.

DATED January 5, 2016.

s/ Janice M. Stewart<br>
Janice M. Stewart<br>
United States Magistrate Judge